STATE OF MINNESOTA *vs.* LOUIS BRIN, Jr.

July 3, 1883.

Indictment—Larceny of R. R. Tickets after being taken up by Conductor.—Gen. St. 1878, c. 95, § 26, was framed to meet, *inter alia*, the case of an appropriation of tickets which had been sold by a railway company to a passenger and *taken up* by a conductor, so as again to become the property of the company by which they were issued, but which, instead of being returned to the proper depositary, were otherwise disposed of by the conductor or some other person with a larcenous intent.

Same—Description of Property.—*State* v. *Taunt*, 16 Minn. 99, (109,) and *State* v. *Hinckley*, 4 Minn. 261, (345,) cited and applied as to description (in an indictment) of stolen property.

Same—Discrepancy in Name.—The discrepancy between the name "The St. Paul, Minneapolis & Manitoba Railroad Company," in an indictment and the name "The St. Paul, Minneapolis & Manitoba Railwaÿ Company" in the evidence, *held*, unimportant.

Corroboration of Accomplice.—Evidence considered, and *held* sufficiently corroborative of the testimony of defendant's accomplices.

Failure to Except to Charge.—*State* v. *Staley*, 14 Minn. 75, (105,) followed as to effect of failure to except to instructions given to a jury.

Defendant and another were arraigned in the district court for the county of Otter Tail, upon the following indictment, viz.:

"Louis Brin and H. Malloy are accused by the grand jury of the

county of Otter Tail and State of Minnesota, by this indictment, of the crime of larceny, committed as follows:

"The said Louis Brin and H. Malloy, on the 13th day of July, A. D. 1882, at the city of Fergus Falls, in the county of Otter Tail, in the state of Minnesota, feloniously took, stole and carried away divers and sundry genuine railroad passenger-tickets, prepared for sale to passengers and after the sale thereof, the personal property of and issued by the St. Paul, Minneapolis & Manitoba Railroad Company, a railroad corporation duly organized under the laws of the state of Minnesota, of the value of more than twenty dollars, to wit, of the value of $900; a more particular description of said railroad passenger tickets, or any of them, or the number thereof is to the grand jury unknown; contrary to the forms of the statutes, and against the peace and dignity of the state of Minnesota.

"Dated at the city of Fergus Falls in the county of Otter Tail, in the state of Minnesota, the 24th day of November, A. D. 1882.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;"

A demurrer to the indictment was overruled by *McKelvy, J.,* and defendant Brin, having been tried, convicted, and sentenced, appeals from the judgment.

*John G. Woolley,* for appellant.

The indictment is bad (1) for repugnancy, in alleging that the tickets had been sold by the railroad company, and yet are its personal property, (2) for want of description,—*Duvall* v. *State*, 63 Ala. 12; *State* v. *Hinckley*, 4 Minn. 261, (345,)—(3) for uncertainty in failing to state that these tickets, after the sale thereof, came again into the possession of the company, and in failing to state the acts, facts and circumstances by reason of which they again became the property of, and were in the possession of, the railroad company, (*State* v. *Brown*, 12 Minn. 393, (490;) *State* v. *McIntyre*, 19 Minn. 65, (93;) *Watts* v. *State*, 6 Tex. App. 263,) and in failing to state the manner of the commission of the offence, (*Com.* v. *Richardson*, 126 Mass. 34;) and (4) because there is no such railroad as alleged in the indictment known to the laws of Minnesota.

*W. J. Hahn,* Attorney General, for the State.

BERRY, J.   Gen. St. 1878, c. 95, § 26, reads: "Whoever steals, takes, and carries away any railroad passenger-ticket or tickets, prepared for sale to passengers, previous to or after the sale thereof, being the personal property of any railroad company, or any other corporation or person, is guilty of larceny."   The indictment before us, which is founded upon this section, charges that defendant "feloniously took, stole, and carried away divers and sundry genuine railroad passenger-tickets, prepared for sale to passengers, and after the sale thereof, the personal property of, and issued by, the St. Paul, Minneapolis & Manitoba Railroad Company, a railroad corporation," etc.

1. The statute was evidently framed to meet, *inter alia*, the case of an appropriation of tickets which had been sold by the railroad company to a passenger, and *taken up* by a conductor, so as again to become the property of the company by which they were issued, but which, instead of being returned to the proper depositary, were otherwise disposed of by the conductor or some other person with a larcenous intent.   Keeping this purpose of the statute in view, it will be apparent that there is no repugnancy in the statute itself, or in the indictment, which substantially pursues it.   Notwithstanding a ticket has once been sold, it may subsequently become the property of the company which issued it, by being properly taken up by a conductor.

2. After describing the tickets as above quoted, the indictment proceeds to allege that a more particular description of any of them, or their number, is to the grand jury unknown.   The description is sufficiently definite, not only within the rule of *State* v. *Taunt*, 16 Minn. 99, (109,) but also within the narrower rule of *State* v. *Hinckley*, 4 Minn. 261, (345.)

3. The discrepancy between the name in the indictment, "The St. Paul, Minneapolis & Manitoba Railroad Company," and the name "The St. Paul, Minneapolis & Manitoba Railway Company," is unimportant.   "Railroad" and "railway" are used interchangeably. They are as nearly exact synonyms as any two words in the language.   Though the latter name was, in strict accuracy, the correct corporate name of the company intended, there can be no doubt that

the other name is used as designating the same company. In common speech it is its more frequent designation.

4. We have carefully perused the evidence, and, in our opinion, it furnishes ample support to the verdict, especially when the nature of the criminal transactions charged, and the intrinsic difficulty of ferreting them out, are taken into consideration. The testimony of the defendant's accomplices is sufficiently corroborated by other evidence fairly tending, in some degree, to convict defendant of the commission of the offence. Gen. St. 1878, *c.* 73, § 104; *State* v. *Lawlor*, 28 Minn. 216. The testimony of the detective Powers, especially with reference to ticket No. 346; the testimony of Lounsbury as to the defendant's bribing him to give false testimony in regard to the manner in which defendant obtained some of the tickets, so as to exculpate him from the offence charged; the unsatisfactory nature of the testimony of the defendant himself, in attempting to account for the large number of tickets found in or traced to his possession; the contradictions of his testimony by other witnesses, and the testimony of Horn and other testimony as to many circumstantial matters,—are of this corroborative character.

5. We do not discover that any objections or exceptions were taken to the charge of the court. While this is a good reason why we should not consider the objections made here to the charge,—*State* v. *Staley*, 14 Minn. 75, (105;) *Cole* v. *Curtis*, 16 Minn. 161, (182,)—we may add that, upon looking into it, we are of opinion that none of the objections are well founded.

The judgment of the district court is affirmed, and its sentence directed to be executed.