## STATE v. ROBERT G. GREEN AND ANOTHER.
### ROBERT G. GREEN, APPELLANT.[1]

September 15, 1922.

No. 22,759.

**Conviction for grand larceny supported by circumstantial evidence.**

1. The circumstantial evidence in a criminal case, though not strong, may be sufficient to support a verdict of guilty, approved by the trial court. The circumstances related in the opinion were sufficient to justify a verdict convicting defendant of the crime of grand larceny.

[1]Reported in 189 N. W. 711.

Foundation for statement of conclusion by witness.

    2. It is largely within the discretion of the trial court to determine whether a sufficient foundation has been laid to permit a witness to state a conclusion.

Robert E. Green and another were indicted by the grand jury of Otter Tail county charged with the crime of grand larceny in the first degree. Green was tried in the district court for that county before Parsons, J., and a jury which found him guilty as charged in the indictment. From the judgment of conviction and an order denying his motion for a new trial, defendant appealed. Affirmed.

    *N. F. Field* and *M. J. Daly*, for appellant.

    *Clifford L. Hilton*, Attorney General, and *Anton Thompson*, County Attorney, for respondent.

LEES, C.

Robert E. Green and Stanley Rohweter were jointly indicted upon a charge of grand larceny in the first degree. Rohweter, who had been admitted to bail, failed to appear for trial and his bail was forfeited. Green was tried, found guilty, and appealed from a denial of a new trial and from the judgment of conviction. A reversal is sought on the ground that the evidence does not support the verdict.

The indictment described the property stolen as United States bonds amounting to $1,000 and $500 in money belonging to Even Sathre. Sathre was an old man living with his wife and children on a farm about 17 miles east of Fergus Falls. During the afternoon of October 20, 1920, Green, Rohweter and another man drove to Sathre's house, borrowed a boat, and went fishing on a lake nearby. An hour or two later the three men returned to the house and Green entered the kitchen where Sathre was alone and entered into conversation with him, asking him to buy stock in a packing company in Fergus Falls, which Green was selling. He had sold some of the stock to Sathre before and the packing company was marketing additional stock. Sathre was entitled to five shares, but did not want it, and Green had him sign a relinquishment of his right to this stock. Green testified that the conversation lasted so

long that his companions came to the door to see what was keeping him, and he asked them to come in. Sathre testified that Green advised him to sell his liberty bonds and buy stock with the money, that he asked where the bonds were kept and was told that they were in a box in the house, and that the three men were in the kitchen at this time.

After some further conversation, Green said he wanted to buy some eggs and gave Sathre a ten dollar bill to pay for three dozen. Sathre went to his desk in an adjoining room, took out a tin box, got out change for the bill and returned to the kitchen, where Green and his companions had remained. The box contained liberty bonds amounting to $1,000, $100 in savings stamps, about $500 in money, a certificate of deposit on a local bank for $1,600, and a number of stock certificates. The door between the kitchen and the adjoining room was open and the three men could see Sathre when he took the box from his desk and counted out the money to make change. A little later they left the house and drove back to Fergus Falls, where they lived. The car in which they came was owned by the packing company, but Green used it in going about the country to sell stock.

On the night of the twenty-first the members of the Sathre family retired shortly before 9 o'clock. Mrs. Sathre, who occupied a downstairs bedroom with one of her daughters, testified that after she fell asleep she was aroused by a sound at the desk where the box was kept. Through the open door of her bedroom she saw a light from a match or flashlight and a man reaching for the box in the desk. Immediately thereafter the man left hurriedly through the kitchen door. It was the custom of the family to leave the outer doors of the house unlocked. Mrs. Sathre gave the alarm. Her husband went to the desk and found that the box had been taken.

Three of his sons were at home that night. It had rained heavily in the afternoon. On going outdoors, the young men discovered the footprints of a man leading from the public highway to the house. On reaching the highway, the tracks of an automobile were seen and indicated that the car had come from the west, turned around in the road and gone back in the direction from which it had

come.  Two of the young men followed in their own car.  For two or three miles the road was muddy and the tracks plainly visible. The road then came to a graveled highway leading to Fergus Falls. The tracks showed that the car they were following had turned to the west on this highway, where they could no longer be discerned on account of its hard surface.  It was testified that the prints of the tires were plain and distinct.  Sathre's sons described them and so did the rural mail carrier, who examined them the following day. Two days after the crime was committed, Sathre's sons, accompanied by the county attorney, examined the Ford car Green drove and found it equipped with tires which would make prints in the road corresponding with those examined at the time of the theft.

Green, Rohweter and the man who was with them at Sathre's house, were arrested.  At the preliminary hearing, the third man was discharged and the other two bound over to the grand jury. At the December term of court the case was continued until May, when Green was tried.  He produced evidence that he was in Fergus Falls from 6 p. m. until after 10 p. m. on October 21.

The state adopted the theory, upon which the case was submitted to the jury, that Rohweter drove or was driven in Green's car to the Sathre house and committed the larceny; that Green aided and abetted him and was answerable as a principal under section 8477, G. S. 1913; that Green and Rohweter visited Sathre's house the day before the theft to ascertain where Sathre kept his valuables; that the purchase of eggs was made in order to get this information; that Green's inquiry as to where the bonds were kept was made for the same purpose; that Green kept away when the box was stolen for fear that he might be recognized by the Sathres, who knew him but did not know Rohweter.

Rohweter was a baker employed at the Kaddatz Hotel in Fergus Falls.  Green was a single man and had lived at the hotel for about three years.  On the afternoon of October 21, Green, Rohweter and two other men drove out from Fergus Falls in Green's car on a hunting expedition.  They were drenched by the rain and returned about 6 o'clock.  In rainy weather Green kept his car in a garage near the hotel.  The door to the garage could not be closed.  Green

left his car there when he returned from the hunting trip and found it there the next morning. He admitted that the car was equipped with tires which would make prints corresponding with those described by the Sathre boys with this exception. They testified that the print of the letter B was made by one of the rear tires. In Green's behalf, it was testified that the letters B and C on the bearing surface and the letter L on either side of one of the rear tires, were equally prominent. The Sathre boys testified that they observed only the imprint of the letter B made by this tire. Green was asked where Rohweter was at the time of the trial, and answered that he did not know and that he had not seen him for five or six weeks. He admitted that in St. Paul, in 1919, he had been convicted of a crime and paid a fine of $100. He explained the purchase of eggs by testifying that he was courting a young woman at Fergus Falls, whom he married later, and that when driving about the country he was in the habit of buying things from farmers and presenting them to her family. There was testimony to the fact that Sathre had always kept his money and securities in his house and made no attempt to conceal them. The proprietor of the Kaddatz Hotel and a young woman employed there testified that they saw Rohweter at the hotel between 8 and 8:15 p. m. on October 21. At the time of the trial, a boy of 17, whom defendant had expected to call as a witness, had the smallpox and was in quarantine. Defendant's attorney made an affidavit for a continuance, stating that the boy would testify that he saw Rohweter asleep in his room in the hotel a few minutes before 9 p. m. on October 21. A continuance was denied and the affidavit read to the jury in lieu of the testimony. No trace of the stolen property has ever been found.

The foregoing is a bare outline of the salient features of the evidence from which we are to determine whether the trial judge was justified in allowing the verdict to stand. In denying a new trial he said that the jury had a right to feel convinced to a moral certainty that Green's automobile was used to convey the actual perpetrators of the crime to and from Sathre's house; that the box was taken by one of Green's companions on the visit made on the previous day, and that the circumstances surrounding the visit, the man-

ner in which the crime was committed by at least one of the three visitors, and the use of Green's car, are difficult to explain on any other reasonable hypothesis than that the visit was planned to look the ground over and facilitate the actual perpetration of the larceny. The case was submitted to the jury in a charge to which no exception was taken.

There is nothing but circumstantial evidence in the case upon which to base a conviction. Such evidence, though not strong, may support a verdict approved by the trial court. State v. O'Hagan, 124 Minn. 58, 144 N. W. 410; State v. Ryan, 137 Minn. 78, 162 N. W. 893. The principle under which a comparison of footprints near the scene of a crime with the footwear of the accused is permitted is equally applicable to the prints of the tires of an automobile to establish its identity. The corpus delicti was proved beyond a doubt, and herein the case differs from State v. McLarne, 128 Minn. 163, 150 N. W. 787, and State v. Jacobson, 130 Minn. 347, 153 N. W. 845, where the circumstantial evidence was held insufficient to prove guilt. Rohweter's failure to appear for trial was an important circumstance tending to establish his guilt. State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Maddaus, 137 Minn. 249, 163 N. W. 507. His presence in Sathre's house at Green's invitation, when the old man revealed the place where he kept the box, is significant. He had no business to transact, was a stranger to Sathre, and there was no occasion for his presence unless Green wanted him to see where Sathre kept his money.

After careful consideration of all the circumstances, the conclusion has been reached that the verdict, having received the approval of the trial judge, ought not to be disturbed.

Error in permitting the witness Edwin Sathre to testify to the kind of tires that made the imprints in the road is assigned, the point being that a sufficient foundation for his testimony was not laid. It is largely within the discretion of the trial court to determine whether a sufficient foundation has been laid to permit a witness to state a conclusion. Clarke v. Philadelphia & R. C. & I. Co. 92 Minn. 418, 100 N. .W 231; In re Estate of Olson v. Johnson, 148 Minn. 122, 180 N. W. 1009, 181 N. W. 569. The witness showed

sufficient familiarity with the subject to justify the court in permitting him to give the testimony objected to.

Order and judgment affirmed.

DIBELL, J. (dissenting.)

I dissent. I am unable to agree with the conclusion of the majority that the evidence sustains a conviction. Except for his disappearance after indictment it likely would not be claimed that the evidence sufficiently connects Rohweter with the crime. His disappearance properly weighs against him. Except for that the case on the record before us is stronger against the third man and no one now claims that he did anything wrong. Rohweter's alibi was supported by evidence not seriously attacked. The proprietor of the leading hotel, where he worked, saw him about 8:15 or 8:20, and a boy in the employ of the hotel saw him in bed a little before 9. His time for getting up in the morning was 5. The Sathre family fix the time of the theft very definitely at 9 and there is corroboration by the testimony of the rural mail carrier to whose house one of the boys went to telephone. No one saw the auto go and no one saw it return. It was in an uninclosed garage at 6 in the evening. But proof of an alibi like proof by circumstantial evidence has elements of weakness. One mistaken fact spoils it all.

The identification of the car is far from certain, not because many Ford autos would be equipped with tires such as the state claims this one was, but because the identification of the tracks on the road might easily be a mistaken one, and especially so when pressed on by a desire to get the guilty party, honestly suspected at the time to be Green. The state made no use of the footprints in the mud of the man who went from the auto to the house though its witness noted and measured them.

In considering the question of the guilt of Green his testimony may be put aside. He is interested. His appearance as a witness may not have been good. His testimony may not read particularly well. He had no background of good character. There are just two circumstances. One is the use of the packing company's auto doubtfully proved. The other is that Green and Rohweter and the

third party were at Sathre's house the day before. There is no dispute about this latter circumstance. That they fished for an hour or two is not disputed. That Green transacted legitimate business with Sathre in getting a release of his right to the additional issue of packing company stock is conceded. He had times before transacted business with Sathre in his house. He had bought produce there before. The state's theory that he took Rohweter and the third man there to get the situation so that Rohweter could later commit a robbery is a suggestion. There is of course no evidence of it. Such purpose is assumed from the fact that they were there. It may be noted that Green says, and the state does not deny, that Rohweter and the third man stayed on the outside of the house and only came in when tired of waiting for him—a circumstance not wholly in keeping with the state's theory.

Sathre had kept his money in his house for years, distrusting banks, and many knew it. He paid his bills from there openly. He paid for his auto from there in midsummer in the presence of the selling agent. He feared banks but had no fear that his money would be stolen and did not conceal it.

To justify a conviction of Green the jury must have found that Rohweter committed the theft. It may be conceded, for the purpose of the case, that the jury could so find. It must then be inferred, to convict Green, that he had an understandnig with Rohweter that the latter should commit the theft—that to that extent he participated in it. And the inference that he did is based on the fact that he and Rohweter and the third man were there the day before, and Rohweter saw, what many knew, where Sathre kept his money, and that the packing company auto was used. This is all there is to it. The evidence furnishes a ground for suspicion. Others might be suspected. Rohweter, seeing where Sathre kept his money, may have taken the packing company auto and have gone for it. There is a suspicion supported by his disappearance. Green may have been a party to it. There is no proof of it unless it be a sufficient condemning circumstance that he had the knowledge that Rohweter had, as well as prior knowledge, and that the auto used was the one which he commonly drove.

It does not seem to me that the circumstantial evidence makes a case of guilt within the rule, accurately stated by the trial court, that there could not be a conviction "if the circumstances in the case can be explained upon any other reasonable theory than that of guilt of the defendant." Of course Green may be guilty. Rohweter may be guilty. Both may be innocent. Sometimes those accused are guilty with less suspicious circumstances against them. Sometimes they are innocent with much more suspicious circumstances surrounding them. There must be more than proof of the corpus delicti with attending circumstances deemed suspicious. There may be a crime without an ascertained criminal. Whatever the fact is, to my mind there is a lack of proof and the evidence does not meet the test of the legal sufficiency of circumstantial evidence.