## STATE v. DAVID TUOMI.[1]

April 9, 1926.

No. 25,327.

**Fire was of incendiary origin.**
1. The evidence sustains the finding of the jury that a fire was of incendiary origin.

**And defendant was guilty of arson.**
2. The evidence sustains the finding of the jury that the defendant set it and was guilty of arson in the second degree.

**Instruction on character evidence correct.**
3. There was no error in the instruction on character evidence.

**Defendant not in position to criticise submission of second degree arson to jury.**
4. The court submitted first degree arson and second degree arson. The jury found the defendant guilty in the second degree. No ob-

[1]Reported in 208 N. W. 528.

jection was made as to the submission of the second degree nor a request proffered that the jury be confined to first degree. It is *held* that the defendant cannot now claim that only the first degree should have been submitted.

Arson, 5 C. J. p. 580 n. 17, 21; p. 581 n. 23; p. 583 n. 60, 62 New.
Criminal Law, 16 C. J. p. 980 n. 87; p. 982 n. 2; p. 1023 n. 79; p. 1049 n. 82; 17 C. J. p. 65 n. 5 New.

Defendant appealed from a judgment convicting him of arson in the second degree, McClenahan, J., in a prosecution in the district court for Itasca county charging him with arson in the first degree. Affirmed.

*Alfred L. Thwing* and *O. J. Larson,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, *Ralph A. Stone,* County Attorney, and *C. C. McCarthy,* Associate Counsel, for respondent.

DIBELL, J.

The defendant was indicted for arson in the first degree and convicted of arson in the second degree. He appeals from the judgment of conviction.

1. On the morning of June 23, 1925, the defendant's building in Grand Rapids was burned. He used a part of the ground floor as a shoe shop and store, and rented the rest; and he used the upper story as his residence.

The fire burst out suddenly with a cloud of black smoke, and flames. The town marshal passed the building on his rounds immediately prior to its starting. He observed nothing unusual. There was other testimony of a sudden starting of the fire. Two or three men engaged in clearing away the debris a week or so later claim that in a depression alongside the Tuomi building they found kerosene; or it may have been gasolene. This evidence may not be particularly forceful, but its effect was for the jury. Fire was not being used at the time in the Tuomi building. It could be found that the fire was accompanied by an explosion; and from all the evidence the jury was justified in finding that it was incendiary.

2.  The defendant was 52 years of age, born in Finland, and a resident of this country for 23 or 24 years.  He came first to Minneapolis, then went to the range country, was in Wisconsin for a while, then back to the range country where he homesteaded in 1904.  After that he lived on his farm or in different towns on the range, but for 10 or 15 years on his farm or in Grand Rapids.  He was a shoemaker by trade.  Gradually he accumulated a stock of boots and shoes and unmanufactured material.  He was industrious and worked long hours.  The evidence indicates that he was prosperous in his little business.  He was repairing and painting his building, and ordering new stock, as if he intended to stay.  His lot, which he had recently bought, was increasing in value.  He was counted a good citizen.  He had a family.  Two of his daughters graduated from the Grand Rapids high school, took some normal school training, and became teachers.  Altogether things seemed to be going well with him.

On the Saturday before the fire his wife and boy went to the farm in his auto to stay for a few days.  He was alone.  The building was insured for $7,500.  This was excessive.  Some of the policies permitted concurrent insurance to the extent of $7,500; but the jury could find that he knew this was too much.  His personal property was insured at $6,000.  The evidence does not show that this was excessive.  But if he collected all the insurance on the building he would be a gainer.

The defendant claims that he retired about 11:30 o'clock and went to sleep; that in the early morning two men came into his room, one carrying a flashlight; that they said that they did not want to hurt his family but were after him; that they had orders to "fix" him because of his complaining of the sale or use of moonshine about the building; that one of them slugged him; that when he awoke he was gagged, and tarred and feathered, except that "black strap" molasses was used in lieu of tar; that he partially loosened the gag, and managed to get out of the window and to the ground, first throwing out some of his property.  The fire was then on.  That he was gagged and feathered is not in dispute.  The gag was a roughly improvised one, made of a stick with ordinary wire

nails driven through, with a device to fasten behind the head. Molasses similar to that used was found in his kitchen. There is testimony that he had objected to the traffic in moonshine, and the use of it about his building, but it is not particularly definite or explicit.

The jury was not required to accept the defendant's story. It was startling. It may have thought that if the strange men wanted to humiliate him, they would have stopped with gagging and feathering him; that they would not burn the building; that the fire, coming immediately and suddenly, and with something like an explosion, was not explainable as a coincidence; and that there was a designed origin which the defendant's condition was intended to conceal. With the circumstances as the evidence showed them, and the defendant's account of them, the jury was justified in finding guilt. The circumstantial evidence was probably as strong as in State v. O'Hagan, 124 Minn. 58, 144 N. W. 410, and State v. Goldman, 166 Minn. 292, 207 N. W. 627, both arson cases; and quite as strong as in State v. Green, 153 Minn. 127, 189 N. W. 711, not an arson case.

3. A number of witnesses testified as to the defendant's good character. There was no evidence opposed. A good showing in behalf of the defendant was made. The court charged the jury:

"The defense in addition to being an absolute denial of many of the facts proffered by the state to show guilt is based to some extent, to a great extent, upon the previous good character of the defendant. That is a perfectly proper line of defense. Of course it is not conclusive, but it is proper to introduce it in order that the jury may consider it in connection with all the other evidence in the case in their effort to arrive at a correct verdict. In every criminal prosecution evidence that the defendant has a good character is admissible, that is, a good character before this charge. Such evidence is to be considered by the jury in connection with all the other evidence in the case, whether such evidence be strong or weak, direct or circumstantial. It may create a doubt as well as solve one. It goes to the probabilities. When you have a question of fact that

raises some doubt in your mind, you may take into consideration the fact that the defendant has been of previous good character and consider that in connection with all the other evidence in the case, in order to determine whether your verdict should be guilty or not guilty."

Except for the last sentence, referring to a doubt, no question can be made of the accuracy of the charge. State v. Nelson, 166 Minn. 371, 208 N. W. 129; State v. Dolliver, 150 Minn. 155, 184 N. W. 848, and cases cited. The charge is to be taken as a whole. Of course if the charge meant that character evidence can only be effective when a doubt is in the minds of the jurors it was erroneous. It should not be held to have that effect. It was not so understood by counsel at the close of the trial. And later, as the charge was about closing, the court said:

"In this case the defendant has introduced evidence of his good character. I charge you that good character is a proper subject for your consideration in determining whether the defendant is guilty of the crime charged. Good character may not only raise a doubt of guilt which would not otherwise exist, but it may with the other evidence bring conviction of innocence."

4. Complaint is made of the submission of arson in the second degree. None was made at the trial, though the court, at the close of its charge, inquired of counsel whether they wished anything further. Defendant and his counsel may have been wise in thinking it to the defendant's advantage that the jury have the second degree as an alternative.

The Tuomi building was not inhabited; but the adjoining hotel building was. The difficulty is in differentiating G. S. 1923, § 10310 (3), relative to second degree, and § 10312, relative to a burning of an inhabited building by a fire set to an uninhabited one. The trial court perhaps felt some doubt as to the propriety of the submission of the second degree. If the facts could be so viewed as to bring the crime charged within the second degree it was the duty of the court to submit that degree; and if there was a doubt as to which of the two degrees the defendant was guilty, if guilty of

one, it was its duty to find the lesser degree. The construction of the two sections of the statute is not free of difficulty, but defendant and his counsel were willing that both degrees be submitted. We follow State v. Morris, 149 Minn. 41, 182 N. W. 721, and hold that the defendant cannot now claim that only the first degree should have been submitted.

We have examined all of the errors suggested by counsel for defendant, and every possible ground of error is urged with great thoroughness. The examination of the defendant by the officers of the law, and the taking of his testimony in shorthand, when he was so deficient in the use and understanding of English, and without counsel, seem harsh, but we cannot say there was prejudicial error in receiving his statement in evidence. Other claims of error do not require discussion. We have been through the typewritten record with all the care a case of this character demands, and we find nothing other than a case for the jury. The state presented its case with vigor, and the defendant likewise. Indeed, both sides presented the case in a way helpful to the jury, without the trial of extraneous issues, and with no apparent unjust prejudice to the defendant. The trial was notably free of objectionable features. The charge of the court was complete. The evidence sustains the verdict and we cannot disturb it.

Order affirmed.

STONE, J., took no part.