STATE v. HERMAN KORSCH.[1]

July 30, 1926.

No. 25,531.

**Testimony of accomplice corroborated.**

1. Evidence to corroborate an accomplice must rest on other than his credit, but it need not be of itself sufficient to prove guilt. The evidence is *held* to corroborate the testimony of an accomplice of the defendant.

**Conviction for arson sustained.**

2. The evidence is *held* sufficient to sustain the verdict.

Arson, 5 C. J. p. 580 n. 16.
Criminal Law, 16 C. J. p. 698 n. 88; p. 711 n. 21; p. 712 n. 30.

Defendant appealed from an order of the district court for Ramsey county, R. D. O'Brien, J., denying his motion for a new trial. Affirmed.

*George W. Peterson, Thomas C. Daggett* and *F. M. Brist,* for appellant.

*Clifford L. Hilton,* Attorney General, *G. A. Youngquist,* Assistant Attorney General, *H. H. Peterson,* County Attorney, and *O. A. Blanchard,* Assistant County Attorney, for respondent.

[1]Reported in 210 N. W. 10.

DIBELL, J.

The defendant was convicted of arson in the third degree and appeals. There are two questions:

(1) Whether the principal witness for the state, an accomplice of the defendant, was corroborated.

(2) Whether the evidence sustains the verdict.

1. The state relies upon the testimony of Joseph Arver, who testified that he set the fire for the setting of which the defendant was convicted for a sum agreed to be paid by the defendant. He was an accomplice and it was essential to a conviction that his testimony be corroborated. Our statute reads:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." G. S. 1923, § 9903.

It was not a rule of the common law that the accused could not be convicted upon the uncorroborated testimony of an accomplice. It was early the practice of the judges to caution and advise the jury as to the weight to be given the testimony of an accomplice, but it was not a rule of law that they must do so. It has come in a large number of states by statutes resembling our own to be a rule of law that an accomplice must be corroborated and the jury must be so told. The history of the rule is interestingly told in 4 Wigmore, Ev. (2d ed.) §§ 2056-2060. In § 2059 the author states the pith of the rule as follows:

"It is clear, as to the *testimonial source* of the corroboration, that it must be independent of the accomplice himself; it must rest on other than his credit."

The corroborative evidence need not be sufficient to prove the offense. Thus in State v. Smith, 144 Minn. 348, 354, 175 N. W. 689, 692:

"It is not necessary that the corroborative evidence should be sufficient, standing alone, to warrant a conviction. It is only neces-

sary that it shall tend in some degree to prove that the defendant committed the crime. If the testimony of the accomplices and the corroborating testimony together establish the guilt of defendant beyond a reasonable doubt, a verdict of guilty is sustained."

The rule is expressed over and over again in varying phraseology. State v. Lawlor, 28 Minn. 216, 9 N. W. 698; State v. Clements, 82 Minn. 434, 85 N. W. 234; State v. Briggs, 122 Minn. 493, 142 N. W. 823; State v. Christianson, 131 Minn. 276, 154 N. W. 1095; State v. Price, 135 Minn. 159, 160 N. W. 677; State v. Dunn, 140 Minn. 308, 168 N. W. 2; State v. Ettenberg, 145 Minn. 39, 176 N. W. 171; State v. Huebsch, 146 Minn. 34, 177 N. W. 779.

The defendant conducted a hat and cap manufacturing and repairing business. His shop was on the third story of a business building in St. Paul. Joseph Arver's testimony is that he set fire to the defendant's stock under an arrangement with him whereby he was to have $750 for his services in setting the fire, and with the understanding that the Reliance Adjustment Company, in which he was interested, was to have the adjustment of the loss and receive a commission of 10 per cent. He says he set a fire about 8 o'clock in the evening of March 13, 1923. The fire was not a success. It was extinguished by the chemical engine of the fire company without material damage. At 6:30 the next morning he set another fire. This was successful. For the first fire he testified that he used varnish remover. One of the firemen testified, rather indefinitely, that he smelled the varnish remover when he was at the fire. The defendant says that there was no varnish remover in his shop. For the second fire Arver used hat dye which he poured upon some sheepskins, starting the fire with a match. So far as appears no fire had been used recently by the defendant in the shop. If there had been, the fact was probably within the recollection of an employe of defendant who was in court but was not called as a witness. There is nothing to suggest accidental fire.

James Arver, a brother of Joseph Arver, testified that some time in August, 1922, while he was working in Joseph Arver's auto shop in Minneapolis, the defendant told him that he was in financial

distress and asked him "to touch off his place." He refused. A few weeks later, according to the testimony of Joseph Arver, the defendant approached him with the view of getting him to set fire to his stock. He signified a willingness to do so if the insurance was enough. It was only $2,000. Arver told him "it was not enough for me to bother about, but if he would get at least $14,000, I would consider the matter." The defendant, Arver says, doubted whether he could get an increase. There were further talks, Arver says, from time to time extending into the next year. James Arver testified that in January, 1923, the defendant requested him to get additional insurance to the amount of $10,000, or thereabouts, and that he secured one policy for $5,000 and another for $5,500. This is not questioned. These policies were delivered to James, later the defendant took them, and there is evidence of Joseph Arver's wife that they were in his possession at a time prior to the fire. The jury could find that the defendant's property was grossly over-insured. Over-insurance naturally suggests motive; but the fact that James Arver at the instance of the defendant got the insurance, after Joseph Arver insisted upon an increase before he would undertake setting the fire, and while he and the defendant were negotiating, is not without corroborative force. The testimony of James that the defendant wanted him to set the fire was admissible as showing a planning. State v. Dunn, 140 Minn. 308, 168 N. W. 2.

As the trial was near, the defendant, according to the testimony of James Arver, put him in touch with one Mintz, who told him that if he testified he might lose his position, and after the time the trial opened the defendant asked James "if Joe was going to talk." The effort of an accused to get a witness not to testify may be considered as corroborative. See State v. Ettenberg, 145 Minn. 39, 176 N. W. 171.

We conclude that there is evidence, aside from that of Arver, tending to prove the corpus delicti and the defendant's connection with the crime. The corpus delicti is quite as strongly proved as in State v. Tuomi, 167 Minn. 74, 208 N. W. 528.

2. The defendant urges that, conceding technical corroboration, the evidence is so weak and Joseph Arver's testimony so unreliable that a conviction should not stand.

At the time of the trial he was in the state prison at Stillwater under a conviction had in June, 1923, of arson in the third degree in setting fire to another building in St. Paul. He had been convicted before of evading the draft in the late war and had served a term at St. Cloud. He was concerned upon his own testimony in the setting of six fires. Three of them he set himself. The other three, two of which were set to his own property, were set by others. He was, so he states, engaged directly or indirectly in the setting of fires for profit and adjusting the losses. Soon after he went to prison he put himself in communication with the authorities with a view of making a disclosure. One of his disclosures made in prison he says was a fabrication to protect his friends and was subsequently withdrawn. He was not offered protection for his present testimony. He says he "was offered nothing," and that his statements were voluntary. They were not without hope of reward, but "with hope, and I still have hope, of being able to convince the parole board that I am entitled to be trusted with my liberty." James Arver and the wife of Joseph Arver were naturally interested in his behalf. This was as evident to the jury as it is to us. His testimony was contradicted by others, many of whom may not have appealed to the jury.

Aside from the testimony of Arver there were circumstances against the defendant. If so there was a motive. The defendant swore to a loss of $19,000, had insurance of $12,500, and settled for less than $7,000. There were circumstances, to which we adverted in considering the corroboration of an accomplice, making against the defendant. It was a circumstance against the defendant if he asked James Arver to set fire to his building. State v. Dunn, 140 Minn. 308, 168 N. W. 2; Martin v. State, 28 Ala. 71; State v. Millmeier, 102 Iowa, 692, 72 N. W. 275. And so if he sought to keep James from testifying. See Com. v. Snell, 189 Mass. 12, 75 N. E. 75, 3 L. R. A. (N. S.) 1019; Crowell v. State, 79 Neb. 784, 113 N. W. 262; State v. Ettenberg, 145 Minn. 39, 176 N. W. 171.

We have not overlooked the favorable character testimony offered in behalf of the defendant. The jury was instructed upon it and assumedly gave it proper consideration. The case was fairly presented to the jury and of the general course of the trial no complaint can be made. Of course testimony from such a witness as Joseph Arver should be scrutinized. We doubt not the jury examined it critically. His credibility was for the jury and is not for us. Notwithstanding all of his misdeeds, the jury might believe that he told the truth relative to the fire. There is no arbitrary rule for weighing testimony. Truthful testimony may come from a bad source. The evidence sustains the verdict.

Order affirmed.