STATE, Respondent, v. MORROW, Appellant.

(266 N. W. 154.)

(File No. 7756. Opinion filed March 30, 1936.)

*E. B. Harkin* and *F. W. Noll*, both of Aberdeen, for Appellant.

*Walter Conway*, Atty. Gen., *Herman L. Bode*, Asst. Atty. Gen., and *Frank L. Sieh*, State's Atty., of Aberdeen, for the State.

WARREN, J. On the night of July 26, 1933, the sheriff of Brown county, S. D., was called by one Paul Lukas who informed him that he (Lukas) had shot an unidentified boy out near Lukas' chicken house. The body of the child was removed to undertaking parlors at Aberdeen where it was identified the next morning by James A. Morrow, a farmer, as that of his 11 year old son, Johnny Morrow. That same morning one John A. Meyer, a hired hand on the James A. Morrow farm, was arrested on a charge of burglary. Meyer was tried, convicted and sentenced to a term of 10 years in the penitentiary. Following the Meyer trial Paul Lukas was tried for manslaughter for the death of Johnny Morrow, and was acquitted. Thereafter, an information was filed against James

A. Morrow, the father of the deceased child, charging him with being an accessory to the commission of the crime of grand larceny. A portion of the information reads as follows: "Did commit the crime of being an accessory to the commission of the crime of Grand Larceny, * * * did wilfully, unlawfully and feloniously conceal and aid one John A. Meyer, after the said John A. Meyer had, on the 26th day of July, 1933, then and there committed a felony, to-wit: Grand Larceny, which felony was committed by said John A. Meyer, as follows: That at said time and place said John A. Meyer did wilfully, unlawfully and feloniously, and by means of fraud and stealth, take, steal, and carry away poultry, being the personal property of Paul Lukas and Max Stokes, to-wit: Eight (8) chickens, of the value of Four ($4.00) Dollars, with intent then and there to deprive the owner thereof; and the said James A. Morrow, at said time and times and place of said concealing and aiding said John A. Meyer, then and there having knowledge that said felony had been committed by said John A. Meyer, and with the intent then and there on the part of said James A. Morrow that said John A. Meyer might avoid arrest and escape from arrest, trial and conviction."

John A. Meyer, mentioned in the information as a felon who had committed the larceny of the poultry, and who had been previously convicted of burglary and sentenced to a term of 10 years in the penitentiary, was the chief witness for the state against the defendant herein. His testimony is to the effect that he and Johnny Morrow, defendant's son, broke into a neighbor's chicken house and stole eight chickens; that Johnny Morrow was shot and killed during the theft. Lukas, who fired the shot, thereafter communicated with the sheriff who took the boy's body to Aberdeen where it was afterwards identified as that of Johnny Morrow. Meyer claimed that he had been advised by the defendant to commit the larceny; that after the larceny was committed he was told by the defendant to hide the chickens, and that thereafter the defendant counseled Meyer to commit perjury by denying that he (Meyer) had participated in and committed the larceny and the breaking into the chicken house for the purpose of stealing the neighbor's chickens. Lukas having been tried and acquitted, the defendant Morrow was tried as an accessory after the fact and designated as

an accessory under section 3593 of our Code, upon which charge defendant was convicted. A motion for a new trial was made and overruled, from which order defendant has appealed.

The record discloses that the defendant, before the arrest of John A. Meyer, told the state's attorney that Meyer did not steal any chickens; told the officials where Meyer could be found; and gave his version as to what had happened. If we believe Morrow's testimony and that of his witnesses, we must conclude that the defendant did not conceal or aid Meyer that he might escape arrest, trial, and conviction on the charge upon which he was arrested. On the other hand, we have the testimony of the convicted Meyer, who upon examination previous to defendant's trial stated both voluntarily and under oath that he did not participate in the crime, and then, at the trial of Morrow, testified that Morrow aided him (Meyer) in concealing the evidence of the crime, and later directed Meyer's defense. If we are to believe Meyer's final testimony, then of course the conviction must stand, unless the errors complained of in appellant's assignments of error are sufficient to warrant a reversal. How much credit and weight should be given to Meyer's testimony is a very difficult problem; the state's attorney having testified as follows: "In prosecuting Meyer I took his testimony under oath four or five times. On all those occasions except in the trial of Paul Lukas in October, Meyer insisted that he had not gone up there to steal chickens."

It is therefore hard to believe the testimony of a convicted felon with such a record of having evaded the issues as disclosed by the testimony given at the trial of appellant.

At the conclusion of the evidence the court instructed the jury in part as follows: "* * * The Court instructs the jury that under the law of this state one cannot be convicted upon the testimony of an accomplice unless such accomplice be corroborated by other evidence as herein indicated. Now the offense with which this defendant is charged is not the commission of grand larceny, but is the offense of knowingly concealing or aiding Meyer, who did commit the grand larceny, with intent that by such concealing or aiding Meyer might escape from arrest, trial or conviction. Meyer testifies that in carrying out a plan designed to permit him to escape from arrest, trial or conviction, and which he says was

participated in by the defendant Morrow, that he—Meyer—committed perjury, which makes Meyer an accomplice of the alleged accessory—Morrow, in the 'concealing or aiding' which is the essence of the crime with which Morrow is charged, and therefore Morrow cannot be convicted upon the testimony of Meyer unless you find in the testimony from some source other than Meyer, evidence which tends to connect Morrow with the crime of 'concealing or aiding' Meyer, with knowledge of Meyer's guilt of the larceny, with intent upon the part of Morrow that Meyer might escape arrest, trial or conviction therefore. Now it is not required that this corroborating testimony should be sufficient in itself to establish all of the elements of the crime with which Morrow is charged. The corroboration is not sufficient if it merely shows that commission of the grand larceny or the circumstances thereof, or the commission of perjury by Meyer, but the corroborating testimony is sufficient if it fairly tends to connect the defendant Morrow with the commission of the crime of 'concealing or aiding.' It is not necessary that such corroborating testimony shall in itself prove or establish the defendant's connection with the commission of the alleged offense, but only that it shall so tend. * * *"

The instruction given by the court as indicated above fairly reflects the law concerning the necessity of corroborating testimony of an accomplice. Section 4882 of the 1919 South Dakota Revised Code is as follows: "*Accomplice.* A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is. not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

It has been repeatedly held, by many courts, that there must be corroboration of the testimony of an accomplice. The Supreme Court of Iowa, in passing upon the sufficiency of corroborating testimony or circumstances, holds: "The record reveals no testimony, 'outside of' that of the confessed accomplices, which tends, in the slightest degree, to connect the defendant with the commission of the offense charged. This presented a question of law for the court. State v. Winters [209 Iowa, 565], 228 N. W. 286." State v. Pauley, 210 Iowa, 192, 230 N. W. 555, 556. For a further

234

discussion of the evidence legally sufficient to corroborate an accomplice's testimony, see Higgins v. State, 136 Ark. 284, 206 S. W. 440, and a recent decision, Yeargain v. State (Okl. Cr. App.) 45 P. (2d) 1113, June 5, 1935.

Reviewing the evidence in the record and in the light of the instructions given by the court (above quoted), and keeping in mind the fact that Meyer had made several statements and testified directly contrary prior to the testimony he gave against the defendant herein, we fail to see how it is conceivable or even possible to arrive at the conclusion that the defendant was guilty of the crime charged in the information. A careful examination of all the evidence in the record before us fails to disclose any testimony pointing to or indicating any corroboration of Meyer's testimony, which under our laws is necessary to sustain a conviction.

Appellant charges that by the ruling of the trial court in the exclusion of evidence he was deprived of having certain evidence submitted to the jury, which evidence would have placed appellant in a favorable light before the jury, and that by the admission of certain prejudicial evidence he was not accorded a fair and impartial trial guaranteed to him by our laws and Constitution. We have carefully examined the record in this respect, and while it would be highly desirable to point out each of the rulings and the evidence which was admitted and in other places excluded, yet it would unduly extend the length of this opinion. We therefore merely give the result of our examination of the errors. In a case such as this, where there have been two previous trials involving much the same set-up of evidence, that is, two cases having been tried previously, those of Meyer and Lukas, much feeling undoubtedly existed, and we are unable to say that the defendant's rights were not prejudiced by the rulings upon the admission and exclusion of certain evidence pointed out in the assignments of error.

Upon a careful consideration of the evidence and the errors complained of by the appellant as to admission and rejection of evidence, we come to the conclusion that this case must be reversed.

The order and judgment appealed from are reversed.

POLLEY, P. J., concurs.

CAMPBELL, J., concurs in result.

ROBERTS and RUDOLPH, JJ., dissent.