STATE OF IOWA, Appellee, v. BERNARD PAULEY, Appellant.

No. 39990.

APRIL 14, 1930.

*Jake S. More* and *Bennett Cullison,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

GRIMM, J.—It appears from the record that the defendant and one Roy Jones worked together on the farm of the defendant's father, Herman Pauley, in Shelby County, Iowa. Jones was a hired man for the father, and lived there. The defendant, who is married, lived with his wife at the home of her parents, some distance from the place of the elder Pauley. These young men were frequently together, in town and other places. They had often been seen together in defendant's car. They worked together on the farm of the elder Pauley. The defendant also engaged in trapping in the neighborhood of his father's farm.

On Sunday afternoon, prior to the night of the larceny in question, the defendant and Jones, in defendant's car, drove to the house of a neighbor, where they negotiated for the purchase of some furs. Afterwards, they went to another farm house near by, and sometime between 3 and 4 o'clock in the afternoon, they started for the home of the elder Pauley. Two lines of travel were open to them. They chose the one which passed the residence of John Petsche, from whose building, about midnight of that day, the furs named in the indictment were stolen.

They arrived at the elder Pauley home about 3:30 or 4 o'clock. Later in the evening, the defendant and Jones went to the town of Harlan, and returned together to the Pauley farm home about 10:15 or 10:30. Jones got out of the car at the elder Pauley home, and the defendant proceeded to his

home, where he remained the balance of the night. About midnight, Roy Jones was caught in the act of stealing the furs from the John Petsche farm. Jones pleaded guilty, and was fined.

On the trial of this case, Jones testified that he took the furs according to an arrangement with the defendant, whereby Jones was to steal the furs and they were to divide the proceeds. The defendant denies the entire transaction, or any knowledge of it.

The first and pivotal question in this case is whether there is sufficient corroboration of the accomplice Jones to warrant the submission of the case to the jury. The statutory provision in controversy is as follows:

"13901. *Corroboration of accomplice.* A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof." (Code, 1927.)

There is some slight evidence in the record concerning some alleged conversations on the part of the defendant after the commission of the crime. One conversation pertains to an alleged statement on the part of the defendant that the defendant and Jones drove past the Petsche place in order that the defendant might show Roy Jones the place where Mr. Petsche lived. In explanation of this, it is claimed that the defendant and his people had at one time occupied this Petsche place, and the drive was made past the Petsche place at Jones's request, to show the same to Jones, who wanted to see it because it had been previously occupied by the defendant's family.

Another scrap of testimony pertains to the same subject, but, according to the witness, the boys drove past the Petsche place after they left Harlan in the evening. This is manifestly untrue, and the witness must have been mistaken. This part of the record contains nothing which amounts to statutory corroboration.

The principal point of corroboration, and the one chiefly relied on by the State, is the testimony of one Frank Petsche, who lived on the farm from which the furs were stolen by Jones. He testified, in substance, that he saw a car pass his father's place between 3 and 4 o'clock on the Sunday afternoon in ques-

tion. He claimed that it was a green-colored Dodge car, and then he said, "I think that is the kind of a car Bernard Pauley has." Further, on cross-examination, he said:

"While I don't say that I just know it was Bernard Pauley's car I saw go past, but I say I know he had a car like that, and I figured it was his car. I would not swear that I saw Bernard Pauley, because I did not see his face. I saw a car that I thought was Bernard Pauley's car."

It will be noted that this testimony becomes material, if at all, solely because Jones, the accomplice, testified that he and the defendant drove past the Petsche place on Sunday afternoon for the purpose of having the defendant show Jones the place where the furs were kept on the Petsche farm.

This court has frequently been called upon to apply this section on corroboration of an accomplice. Each case depends largely on its own particular facts. This court said, in *State v. Christie*, 193 Iowa 482:

"Unless there is evidence which can fairly be said to tend to connect the defendant with the commission of the offense, *outside of the testimony of an accomplice,* then a conviction cannot be permitted to stand." (Writer's italics.)

The mere fact of the acquaintance and relations of the parties,—that they frequently were together, both before and after the larceny,—of itself is not sufficient to corroborate the testimony of the accomplice and to connect the appellant with the commission of the offense. The fact that these boys drove past the Petsche home on Sunday afternoon is as consistent with the defendant's innocence as with his guilt. If it be assumed that the two boys did drive past the Petsche home on Sunday afternoon, as charged, the materiality of the trip depends wholly upon the testimony of the accomplice Jones. He alone sought to make the trip material, by testifying that the defendant and Jones drove past the Petsche place in order that the defendant might show Jones where the Petsches lived and where the furs could be found.

A case somewhat similar on its facts has been decided adversely to the State by this court in *State v. Duncan*, 158 Iowa 652. In that case, Fowler, the accomplice, testified that the de-

fendant took a certain revolver from a burglarized ticket office and hid it in the vault of an outhouse near the depot. The revolver was afterwards found in this outhouse. The court said:

"This corroboration must be by testimony other than that which comes from the accomplice, and it must tend to connect defendant with the commission of the offense. It is manifest that the finding of the revolver at the place where the accomplice, Fowler, said defendant put it, does not tend to corroborate the witness, for he may have put the revolver there himself, and concocted the story about defendant's telling him that he (defendant) placed it there."

So, in the same manner, in the case at bar, the story told by the accomplice, that the defendant and the accomplice drove, on that Sunday afternoon, past the Petsche place in order that the defendant might show Jones where the Petsche place was, and where the furs could be found, might have been a story concocted by the accomplice, concerning which there was no other evidence whatsoever. The attempted corroboration depends for its materiality entirely upon the unsupported testimony of the accomplice.

The record reveals no testimony "outside of" that of the confessed accomplice which tends in the slightest degree to connect the defendant with the commission of the offense charged. This presented a question of law for the court. *State v. Winters,* 209 Iowa 565. It was, therefore, the duty of the trial court to sustain appellant's motion for a directed verdict. Manifestly, the very purpose of the statute in question is to avoid a conviction such as the one at bar.

The case must be, and is,—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.