# STATE v. SIGMUND STAR, ALSO KNOWN AS SIGGIE STAR.

81 N. W. (2d) 94.

February 1, 1957—No. 36,979.

572

*Silver, Goff, Ryan & Wallace* and *Allen H. Aaron,* for appellant.

*Miles Lord,* Attorney General, *George M. Scott,* County Attorney, *C. Paul Jones,* First Assistant County Attorney, and *Harlan Goulett* and *Bruce C. Stone,* Assistant County Attorneys, for the State.

THOMAS GALLAGHER, JUDGE.

Defendant, convicted of third degree burglary, appeals from an order denying his motion (1) for judgment notwithstanding the verdict upon the ground that the evidence was insufficient to sustain it or (2) for a new trial because of newly discovered evidence.

Defendant's principal contention is that the testimony of Edward A. Pec, an admitted accomplice, was not sufficiently corroborated by other evidence to meet the requirements of M. S. A. 634.04, which provides that: "A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, * * *."

The crime, a break-in and theft of a substantial quantity of cigarettes and coffee from Ennen's grocery store, 109 North Seventh Street, Minneapolis, was committed during the late evening of July 5 or the early morning of July 6, 1954. Defendant's trial commenced November 28, 1955. Pec, a twice-convicted felon, there testified that Morris Reznick and the defendant were involved with him in the crime. In a sworn statement made subsequent to the trial, Reznick, who did not testify therein, admitted his participation in the crime with Pec but denied that defendant had been involved in any way.

Pec testified that shortly after midnight of July 5, 1954, in response to a call from defendant, he had driven his car to defendant's home, 903 Logan Avenue North, where defendant and Reznick had

then transferred thereto some cartons of cigarettes, which, defendant then informed him, had just been stolen by Reznick and defendant from Ennen's; that the three had then driven in Pec's car to the home of Frank Ferraro, 355 Lake Owasso Boulevard, in Ramsey County, where the cigarettes had been placed in Ferraro's basement by Pec and Reznick while defendant remained in the car; that thereafter the three had returned to and entered Ennen's through its Seventh Street door which was unlocked and had removed therefrom a quantity of coffee which they had taken to defendant's garage; that the three had then again returned to Ennen's to remove additional coffee, but that while he waited outside of the store for Reznick and defendant on this occasion, he had observed them suddenly emerging and running rapidly in different directions, Reznick across Seventh Street and defendant down the alley adjacent to Ennen's; that he had then driven away quickly, going to defendant's home, where he had deposited the coffee which had already been placed in the car and thereafter had returned to his own home.

Ray Clark, a police patrolman covering the streets near Ennen's, testified that he first discovered the break-in at about 2:15 to 2:30 a. m. July 6, 1954. Presumably, it was his presence shortly prior thereto at Ennen's Glenwood Avenue door which frightened away the participants in the crime. However, no testimony was submitted by Officer Clark or any witness other than Pec that defendant had been seen at or near Ennen's on this occasion nor at Ferraro's when the cigarettes were delivered there a short time later.

Testimony of a private detective, Stanley Tolle, was to the effect that his regular duties consisted of patrolling the area near Ennen's each night; that at about 2:15 to 2:20 a. m. July 6, 1954, he had observed a man running rapidly across Seventh Street near Ennen's; that after he had apprehended him he had been informed by the man that his name was Reznick; that thereafter he had placed Reznick in a taxicab to permit him to go home; that the cab had proceeded south on Hennepin Avenue from Seventh Street; that after he had released Reznick he had driven past Ennen's and there had learned from police officer Clark about the break-in; that he had then pro-

ceeded to Kilroy's restaurant at 1105 Plymouth Avenue North about 5 minutes from Ennen's for the purpose of eating; that there he had observed Reznick and another party, whom he did not identify, about 2:30 or 2:40 a. m.; that he had then apprehended Reznick and taken him back to Ennen's where shortly before 3 a. m. he had turned him over to Officer Clark.

The cab driver testified that Reznick had first requested transportation to a south Minneapolis address but that when nearing Sixteenth and Hennepin he had changed it and requested that he be driven north on Lyndale and later that he be let out near Plymouth Avenue and either Knox, Logan, or Morgan Avenue North. These points are about six blocks from Kilroy's and about five blocks from the home of defendant.

Defendant testified in his own behalf to the effect that he had not participated in the crime; that Reznick was an old friend of his and that, in the early hours of the morning of the crime, Reznick had come to his home and awakened him from sleep and told him of being involved in a fight; that he had then said to Reznick that it was time for him (defendant) to go to work and that he would tell his wife that he was leaving and that he and Reznick would "go down and have a cup of coffee together"; that thereupon he had gone to Kilroy's with Reznick; that upon entering Kilroy's Reznick had immediately been apprehended by a policeman; and that thereafter he had gone on to his employment which consisted of purchasing potatoes or fruit from the Morrison Fruit Company in Minneapolis and thereafter transporting such merchandise by truck into Iowa for sale. Defendant's testimony insofar as it related to the instances which occurred at his home was corroborated by his wife, who also testified that in his work it was customary for defendant, when home, to leave about 3 or 4 a. m. for his work.

Defendant was not arrested or charged with the crime until June of 1955. Police officers arresting him testified that, when they then had questioned him as to his whereabouts on July 6, 1954, he had answered that he had been in Iowa for the purpose of delivering

potatoes and that he had denied being in Kilroy's cafe with Reznick that day.

Reznick did not testify at the trial. Shortly thereafter he submitted a sworn statement to the effect that only he and Pec had been involved in the burglary; that defendant had taken no part therein; that just prior thereto he had parked his car near Morgan and Plymouth Avenue North in Minneapolis and had met Pec nearby; that thereupon with Pec he had proceeded to Ennen's in Pec's car where the burglary was committed between the hours of 11 p. m. July 5, 1954, and 1 a. m. July 6, 1954; that after he had been first apprehended by Tolle as above described he had taken a cab from Seventh Street and Hennepin Avenue and directed the cab driver to proceed south, but that later he had changed such directions and ordered the cab driver to take him to the vicinity of Morgan and Plymouth Avenue North; that he had there taken his car and driven about for a while and later had called upon defendant at the latter's home; that he had then told defendant that he had been in a fight and that he and defendant had then gone to Kilroy's for coffee; that while there he had been arrested by Tolle; and that he had not met defendant until approximately one and one-half hours after the crime had been committed.

It is the state's contention that under § 634.04 evidence that defendant was in the company of Reznick at Kilroy's shortly after the crime and evidence that defendant's testimony as to his whereabouts July 6, 1954, was at variance with statements which police officers testified he had made to them at the time of his arrest constituted sufficient corroboration of the testimony of Pec to sustain defendant's conviction.

■ In construing § 634.04 we have pointed out that the reason for requiring that the testimony of an accomplice be bolstered by corroborative evidence is that such testimony is from one admittedly corrupt and therefore likely to have been submitted in the hope of clemency. State v. Rasmussen, 241 Minn. 310, 63 N. W. (2d) 1; State v. Jackson, 198 Minn. 111, 268 N. W. 924. We have repeatedly held that the required corroboration must, independent of the testi-

mony of the accomplice, tend to convict the accused and not merely show the commission of the crime or the circumstances thereof. State v. Scott, 203 Minn. 56, 279 N. W. 832; State v. Baker, 161 Minn. 1, 200 N. W. 815.

■ Such corroborative evidence, of course, may be circumstantial in nature and may relate to the conduct of the accused, such as evidence of his presence at the scene of the crime, or evidence of his association with one known to have participated therein at about the time the crime was committed under suspicious circumstances. State v. Rasmussen, *supra;* State v. Demopoulos, 169 Minn. 205, 210 N. W. 883. Suspicious circumstances may relate to the unseasonableness of the hour of such presence or association without reasonable explanation therefor; or to the subsequent false denial by the accused that he was thus present or had thus been in association with a participant in the crime. State v. Rasmussen, 241 Minn. 310, 63 N. W. (2d) 1; 22 C. J. S., Criminal Law, § 812, p. 1405.

■ The evidence relied upon by the state as corroborative here does not appear to come within the above principles or the rule clearly expressed in State v. Rasmussen, *supra.* When the state rested, there was nothing, other than the testimony of Pec, which in any way linked defendant to the crime. No one else testified that anyone but Reznick was seen running from the scene. There was no testimony that any part of the stolen property was ever discovered in defendant's possession. Only Pec testified that defendant was present when the cigarettes were delivered to Ferraro's. When Reznick was arrested by Tolle, no attempt was made to apprehend defendant. Tolle made no observation of the man with Reznick, apparently under the belief that only the latter was involved in the crime. Defendant took the stand in his own behalf and admitted his presence with Reznick at Kilroy's but submitted a reasonable explanation thereof. When the close proximity of Kilroy's to defendant's residence and the requirements of defendant's early working hours in his employment are taken into consideration, it would seem that his explanation for the occasion of his presence with Reznick at Kilroy's is as consistent with his innocence as with his

guilt. See, State v. Elsberg, 209 Minn. 167, 295 N. W. 913; State v. Pauley, 210 Iowa 192, 230 N. W. 555; Privett v. Commonwealth, 233 Ky. 471, 26 S. W. (2d) 3; People v. Kress, 284 N. Y. 452, 31 N. E. (2d) 898.

■ Evidence that defendant had falsely stated to the police officers arresting him that he had been in Iowa on July 6, 1954, and had falsely denied to them that he was in Kilroy's with Reznick that date was submitted as indicative of circumstances sufficiently suspicious to constitute the corroboration required under § 634.04 within the rule expressed in State v. Rasmussen, *supra*. Defendant denied making such statements, but in any event, a close scrutiny of the officers' testimony does not establish that he had made false replies to their questions. They testified that, when asked where he had been July 6, 1954, defendant had replied that he was in Iowa delivering potatoes. This is consistent with his testimony as to the reason for his early rising that date, and there is nothing to show that he did not make the Iowa trip. The officers testified further that, when asked if he had been with Reznick *"the evening* of July 6th or *the day* of July 6, 1954,"* (italics supplied) defendant had replied, "no, that he was out of town." Since Reznick was in custody prior to the *day* or *evening* of July 6, 1954, this reply was not demonstrated to have been false. The officers testified that, when asked if he had been in Kilroy's July 6, 1954, defendant had replied that he "definitely wasn't in there that night because he was out of town." If defendant did travel to Iowa July 6, 1954, it would follow that this reply was not demonstrated to be false. Such questions and answers were submitted some 11 months after July 6, 1954. At such late date it would not seem reasonable to expect that defendant would remember every detail of his whereabouts on the prior date. In justice it can scarcely be held that such evidence is of sufficient weight to constitute the corroboration required by § 634.04.

When it is considered in conjunction with Reznick's sworn statement that defendant did not participate in the crime and that Reznick and Pec alone committed it, it would seem clear that a new trial should be granted so that a jury may have the opportunity of hear-

ing and considering Reznick's testimony before finally determining the guilt or innocence of the defendant.

Reversed and new trial granted.

DELL, CHIEF JUDGE (dissenting).

Considering the evidence as a whole and the reasonable inferences to be drawn therefrom, I am of the opinion that under such cases as State v. Rasmussen, 241 Minn. 310, 63 N. W. (2d) 1, the testimony of the accomplice was sufficiently corroborated to satisfy M. S. A. 634.04. As I see it there was a fact question involved which the jury had a right to decide as it did. What importance was to be attached to the sworn statement made by Reznick subsequent to the trial and whether it was of such probative force as to require a new trial, presented questions which the trial court was in a far better position to decide than this court. In a memorandum attached to the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, the court stated:

"The Court is of the opinion that the defendant had a fair trial; that it was free from the slightest taint of bias or prejudice, and that the verdict was justified by the evidence. To grant a new trial upon the entire record in this case, including the so-called newly discovered evidence, would not, in the opinion of this Court, be in the interests of justice."

In my opinion, on the record before us, the lower court was justified in refusing to set aside the conviction and I therefore dissent.