**STATE of Minnesota, Respondent,**

v.

**Rhona Ann WALLERT, Appellant.**

**No. C5–86–1478.**

Court of Appeals of Minnesota.

March 17, 1987.

Review Denied May 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Spec. Asst. Atty. Gen., St. Paul, James R. Olson, Brown County Atty., New Ulm, for respondent.

C. Paul Jones, State Public Defender, Marie Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and PARKER and

LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Rhona Wallert was convicted of aiding and abetting the commission of a second-degree burglary. On appeal she claims the State's evidence was insufficient to corroborate the testimony of her alleged accomplices. We agree and reverse.

## FACTS

This case involves the theft of a television set by two boys, 12–year-old D.F. and 13–year-old L.Z. The boys testified that during the afternoon of September 14, 1985, they went to visit Wallert, who is L.Z.'s aunt. According to L.Z., Wallert and the boys discussed the possibility of stealing a television set from one Mamie Zupfer. Some time after 3:00 p.m., Wallert allegedly drove the boys to Zupfer's house, which was empty because Zupfer was at church. Wallert dropped the boys off and drove around the block while they went into the house and took Zupfer's television. Wallert then returned to pick up the boys, and they brought the television back to Wallert's apartment. When they plugged in the television, they discovered it did not work, presumably because L.Z. had dropped it, so they put it in a garbage bag and threw it into a dumpster behind Wallert's building. Before the boys left her apartment around 6:00 that night, Wallert allegedly told L.Z. that she would "kill them" if they ever told the police of her involvement in the burglary.

L.Z.'s mother testified that she went to Wallert's apartment at about 6:30 that evening looking for her son, but Wallert told her that L.Z. was not there. According to L.Z.'s mother, Wallert appeared to be alone, but was standing in the doorway so as to appear intentionally to block her view into the apartment.

The defense witnesses, all of whom were present when Wallert was first questioned by the police, presented a much different version of the events of September 14, 1985. Wallert's mother, daughter, son, daughter-in-law, and Wallert herself testified that they all were at Wallert's apartment from about 1:30 p.m. that day until 1:00 a.m. the next morning and that Wallert was there at the time of the burglary. None of these witnesses, however, came forth to tell anyone about this alibi before the trial. The defense witnesses also denied that L.Z.'s mother ever showed up at Wallert's apartment that night looking for her son. They further testified that the only time L.Z. and D.F. were at the apartment on September 14 was sometime between 7:30 and 9:30 at night, when the boys showed up there drunk and Wallert's son kicked them out.

The boys eventually were implicated in the burglary, and they agreed to testify against Wallert in exchange for the State's agreement to drop all juvenile proceedings against them. Wallert was subsequently charged with aiding and abetting the commission of a second-degree burglary, Minn. Stat. §§ 609.582, subd. 2, and 609.05 (1984). At a jury trial, she was convicted and sentenced to 43 months in prison and ordered to make restitution of $117.

## ISSUE

Was the testimony of Wallert's alleged accomplices sufficiently corroborated to support her conviction?

## DISCUSSION

Minn.Stat. § 634.04 (1986) provides that "[a] conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense * * *." An accomplice is "one who has been or could be convicted of the same offense with which the defendant has been charged." *State v. Houle*, 257 N.W.2d 320, 324 (Minn.1977). The testimony of one accomplice cannot be corroborated solely by that of another accomplice. *In the Matter of the Welfare of K.A.Z.*, 266 N.W.2d 167, 169 (Minn.1978).

■ "The quantum of corroborative evidence required in any case will depend on the circumstances involved, with consideration given to the claims of both the defendant and the state." *State v. Mathiasen*, 267 Minn. 393, 399, 127 N.W.2d 534, 539 (1964). In every instance, however, the corroborative evidence must in some substantial degree confirm the truth of the accomplice's testimony and point to the guilt of the defendant. *Houle*, 257 N.W.2d at 324; *see* Minn.Stat. § 634.04. The court must bear in mind that "the testimony of an accomplice is considered inherently untrustworthy," *State v. Sorg*, 275 Minn. 1, 5, 144 N.W.2d 783, 786 (1966), and "[t]he accused is exposed to the danger of imprisonment based on the testimony of a witness naturally inclined to shift or diffuse criminal responsibility." *Mathiasen*, 267 Minn. at 399, 127 N.W.2d at 539.

■ Here the State recites several examples of evidence which purportedly corroborated the boys' story, but none of the corroborative evidence points directly to Wallert's guilt. First, the State attacks the alibi put forth by Wallert and her relatives. The jury apparently did not believe this alibi, and on the record the alibi does appear to have been dubious. This does not, however, necessarily indicate that Wallert committed the crime. It is equally likely that Wallert's fabrication was prompted by her fear of being charged with a crime she did not commit, especially in light of the fact that she had three previous felony convictions. Inadequacies in a defendant's testimony may corroborate accomplice testimony. *See, e.g., State v. Adams*, 295 N.W.2d 527, 533 (Minn.1980). However, when evidence is as consistent with the defendant's innocence as with her guilt, the evidence is not sufficient to corroborate the testimony of accomplices. *See State v. Star*, 248 Minn. 571, 576–77, 81 N.W.2d 94, 98 (1957).

The State cites as corroborative evidence Wallert's admission that she gave the boys a ride to the scene of the crime earlier that day. However, Wallert's testimony did not corroborate that of the boys. She testified that she drove the boys to Zupfer's house at about 1:00 p.m., whereas the boys claimed she gave them a ride at about 3:00 p.m. Moreover, the case cited by the State in support of this argument is distinguishable. In *K.A.Z.*, 266 N.W.2d at 167, the supreme court upheld a conviction for arson where fires had been set in three school lavatories during one school day. The accomplices' testimony was corroborated by that of the assistant principal, who testified that the defendant was one of only four students who were present in the school but truant from class at the time the fires were set. Here, there was no corroborating testimony placing Wallert at the scene of the crime at the time the television was stolen.

The State next attempts to construe Wallert's actions after the burglary as corroborative evidence. First, when L.Z.'s mother came to Wallert's apartment looking for her son, it appeared to her that Wallert was home alone. At best, this testimony merely tends to negate Wallert's alibi. It does not corroborate the boys' testimony; they did not testify that L.Z.'s mother came to Wallert's apartment while they were there. L.Z.'s mother further testified that Wallert positioned herself in the doorway so that L.Z.'s mother could not see inside. Again, this testimony raises a suspicion only that Wallert was attempting to hide someone or something, not even suggesting complicity in the commission of a crime.

The State also notes that when a police officer told Wallert that she had been implicated in a burglary, she immediately responded that she had no use for a color television. Because the officer had not yet mentioned anything about a color television, the State asserts that Wallert's statement showed that she "knew too much." However, considering that her nephew had already been questioned about the burglary, which had occurred over two months earlier, it is not surprising that Wallert knew about the burglary and knew that it involved a color television, and she so testified.

Finally, the State relies on the testimony of Michael Bruns, a garbage collector who recalled seeing a television set in the dumpster behind Wallert's apartment a few days after the burglary. His testimony allegedly corroborated the boys' claim that they threw Zupfer's television in the dumpster after they discovered it did not work. However, Bruns testified that the television he saw appeared to be an old, scuffed-up, 12–inch black-and-white model and that it was not in a garbage bag. All of these factors suggest that the television Bruns saw was not the one that was stolen. Zupfer's television was a 19–inch color set valued at $350 for restitution purposes, and the boys both testified that it was enclosed in a garbage bag when they threw it in the dumpster. In fact, Wallert asserts that Bruns' testimony actually describes an old television set that she had thrown in the dumpster about a week earlier.

Circumstantial evidence may be sufficient to corroborate accomplice testimony. *State v. Armstrong*, 257 Minn. 295, 308, 101 N.W.2d 398, 407 (1960) (quoting *State v. Rasmussen*, 241 Minn. 310, 313, 63 N.W.2d 1, 3 (1954)). However, the circumstantial evidence must clearly support the defendant's implication in the crime. *State v. Stave*, 280 Minn. 269, 270, 158 N.W.2d 848, 850 (1968). Bruns' testimony was equivocal at best and did not clearly support Wallert's implication in the burglary.

We are cognizant of the fact that the jury is always in a superior position to view the demeanor of the witnesses and to judge their credibility. We are also mindful, however, that the objective of Minn. Stat. § 634.04 is to guard against convictions based solely on accomplice testimony which might have been given to "shift or diffuse responsibility in order to curry the favor of law enforcement officials." *State v. Azzone*, 271 Minn. 166, 170, 135 N.W.2d 488, 493 (1965). Such a motive is even more likely when, as here, the accomplices would have known that the defendant would be a likely suspect due to her prior felony convictions. In light of the cautionary nature of the statute and the essential-ly tenuous corroborative evidence, Wallert's conviction cannot stand.

## DECISION

Reversed.