STATE of Minnesota, Respondent,

v.

Robert George HEAD, Appellant.

No. C3–96–833.

Court of Appeals of Minnesota.

March 18, 1997.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Walter M. Kaminsky, Sherburne County Attorney, Thomas N. Price, Assistant County Attorney, Elk River, for Respondent.

Michael F. Cromett, Assistant State Public Defender, St. Paul, for Appellant.

Considered and decided by WILLIS, P.J., and PARKER and PETERSON, JJ.

## OPINION

PETERSON, Judge.

On appeal from convictions arising out of the illegal possession of marijuana and the illegal use of license plates, Robert Head challenges the district court's rulings excluding evidence about a witness's prior misdemeanor convictions for providing false information to police and admitting evidence about Head's prior convictions for controlled substance crimes. Head also argues that the evidence was insufficient to support his convictions for fifth-degree controlled substance crimes, possession of marijuana, and possession of marijuana with intent to sell. We affirm.

## FACTS

On March 10, 1995, state patrol trooper Mitchell Seuss stopped a car for speeding. Clifford Casady, a patrol officer for the city of Big Lake, arrived a short time later to assist at the scene. Appellant Robert Head was driving the car. Keith Braddock and Braddock's girlfriend, Shirley Homer, were riding in it.

When Seuss requested identification, Head produced a driver's license receipt. Braddock identified himself as Ronald John Cloud

and said that he owned the car. Braddock said that he had just purchased the car the day before and did not have proof of insurance with him.

Seuss ran a driver's license check on Head and "Ronald John Cloud." Head had a valid driver's license. There was no record of a driver's license for a "Ronald John Cloud," but Wright County had issued an arrest warrant for someone with that name. Because the physical description on the arrest warrant did not match Braddock, Seuss asked Braddock for his real name. Braddock then identified himself as "Keith Edward Cloud." Seuss testified at trial that, a short time later, Casady informed him that Homer and Head had identified Braddock by his real name. Seuss arrested Braddock for providing false information. Braddock testified that he initially lied about his identity because Wisconsin had an outstanding felony arrest warrant for him for absconding while on parole for attempted auto theft.

A registration check on Braddock's car showed that the registration had expired in 1994. However, there was a 1995 registration sticker on the license plate. Seuss ran a check on the registration sticker but did not receive the result immediately. Seuss testified that Braddock said he had had the car for a couple of months, which differed from Braddock's initial statement that he had purchased the car the previous day. Seuss testified that Braddock claimed he knew nothing about the registration stickers but admitted he did not have insurance for the car.

Casady testified that when he spoke to Homer and Head at the scene, Head appeared nervous, asked whether he could leave, and made no eye contact with Casady. After completing the license and registration checks, Seuss released Homer and Head, but not Braddock or the car. After Head and Homer left, Seuss learned that the sticker on Braddock's license plate was registered to Head and belonged on a different vehicle.

During an inventory search of the car, Casady found a partially-smoked marijuana cigarette in the glove compartment. In the trunk, underneath a lot of trash, Seuss found a black, red, and white shopping bag with a green bag inside. The black, red, and white bag also contained two packages of marijuana, each weighing about one pound. The green bag contained a single package of marijuana, also weighing about one pound.

After finding the marijuana, Seuss dispatched Casady and some other troopers to find Homer and Head. Casady found Head a few blocks from the scene of the stop and arrested him. During a search incident to arrest, Casady found $70 in cash in Head's left front pocket, $500 in cash in his right rear pocket, and a pager in his jacket pocket. The cash was in denominations of twenty-, ten-, and five-dollar bills, and none of it was in a billfold. Casady testified that he seized the cash and pager "because normally those are the kinds of items that are used in the drug trade or selling drugs." Police did not find any cash on Braddock or Homer.

A Bureau of Criminal Apprehension (BCA) report received into evidence at trial showed that the total weight of the marijuana found in the trunk of Braddock's car was 1326 grams. The parties stipulated the value of the marijuana was between $4,500 and $6,000. The plastic bags in which the marijuana was packaged were submitted to the BCA for testing. Two of the bags revealed no fingerprints suitable for comparison. One of the bags revealed two latent fingerprints, but they did not match Braddock's or Head's fingerprints.

Braddock testified at trial that he agreed to give Head a ride to Brainerd because he owed Head $100 for an ounce of marijuana. In exchange for the ride, Head agreed to buy dinner and deduct $50 from the debt. Head had more than one ounce of marijuana in his possession when he gave Braddock the ounce a few days earlier, but Braddock did not know how much more. On March 10, Head arrived at Braddock's apartment carrying a gray and black shopping bag, keys, and another item. Head, Braddock, and Homer left in Braddock's car. They stopped at Head's house, and Head went inside. When Head returned to the car, he was carrying a larger bag. Braddock moved Head's bag, along with some trash, from the car's back seat to the trunk. Braddock did not see what was inside Head's bag because it was tied. Head

gave Braddock a registration sticker to put on his license plate, so the car would appear legally registered. Braddock denied knowing that marijuana was in the trunk of his car.

Braddock also testified about his prior conviction for attempted auto theft in Wisconsin and admitted acting as a middleman in five to seven transactions involving marijuana. He testified that those transactions involved only small amounts of marijuana. The district court denied Head's request to impeach Braddock with two prior misdemeanor convictions for providing false information to police.

Homer testified at trial that when Head arrived at Braddock's apartment on March 10, he was carrying a dark-colored, plastic bag. Head said he wanted to stop at his house to pick up something. Head took his bag inside with him and then brought it back out to the car. Head put his bag on top of a pile of trash in the back seat. Braddock moved the trash and Head's bag from the back seat into the trunk. Homer did not know what was in Head's bag. Homer had never known Braddock to possess packages containing about one pound of marijuana. At trial, both Homer and Braddock identified the black, white, and red bag in which Seuss found the marijuana as Head's bag.

The district court admitted evidence showing that Head had two prior convictions for controlled substance crimes. In its motion to admit the evidence, the state alleged the following facts. In September 1991, Head was in a vehicle involved in a routine traffic stop. During the stop, police found two pounds of marijuana in the trunk of the vehicle. Police also found $3,000 in United States currency wrapped in bank binders in the lining of Head's coat. Head also had a beeper with him. Head initially denied the marijuana belonged to him, but eventually admitted that he had facilitated the sale of drugs to a relative. In 1993, in Hennepin County, Head, Fabian Crowe, and William Benjamin were apprehended in the act of selling one pound of marijuana to a fourth individual. Head came to the scene of the drug sale with Crowe, who had received an order for one pound of marijuana. Head took the marijuana from Benjamin and delivered it to the fourth individual. Police found six pounds of marijuana during a search of Benjamin's house. Crow claimed Head was his contact person for the marijuana. Head blamed Crowe for the marijuana.

Pursuant to the parties' stipulation, the jury was provided with the following information regarding the prior convictions. In 1991, Head was convicted of conspiracy to commit a fifth-degree controlled substance crime. The offense occurred in Morrison County and involved over one pound of marijuana. In 1993, Head pleaded guilty to fifth-degree controlled substance crime. The offense occurred in Hennepin County and involved about one pound of marijuana.

## ISSUES

I. Did the district court err by denying Head's request to impeach Braddock with two prior convictions for providing false information to police?

II. Did the district court err by admitting evidence regarding Head's prior convictions for controlled substance crimes?

III. Was the evidence sufficient to support Head's convictions?

## ANALYSIS

### I.

 Construction of a rule of evidence is a question of law subject to de novo review. *Cf. Stoebe v. Merastar Ins. Co.*, 554 N.W.2d 733, 735–36 (Minn.1996) (applying that standard when construing rule of civil procedure). Minn.R.Evid. 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

The state argues that, under Minn.R.Evid. 403 and also under its general authority to

limit the scope of cross-examination, the district court had discretion to exclude the evidence about Braddock's prior convictions for providing false information to police.[1] Minn.R.Evid. 403 allows the district court to exclude relevant evidence

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The district court has discretion to limit the scope of cross-examination of a prosecution witness based on these same concerns and to prevent the witness from being harassed. *See State v. Lanz–Terry*, 535 N.W.2d 635, 639 (Minn.1995) (discussing district court's authority to limit scope of cross-examination).

■ Minn.R.Evid. 609(a)(2) is similar to Fed.R.Evid. 609(a)(2). Therefore, this court may look to federal caselaw for guidance in construing the Minnesota rule. *See State v. Stanifer*, 382 N.W.2d 213, 217 (Minn.App. 1986) (looking to federal caselaw for guidance in construing Minn.R.Evid. 609(a)(2)). The United States Supreme Court held that the mandatory language of rule 609(a)(2) overrides the district court's general discretion to exclude evidence under rule 403. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 525–26, 109 S.Ct. 1981, 1993, 104 L.Ed.2d 557 (1989). The Court noted that general provisions do not apply when a specific rule governs and that rule 609 contained its own balancing provisions. *Id.* 490 U.S. at 523–26, 109 S.Ct. at 1992–93.[2]

Minn.R.Evid. 609 also contains its own specific balancing provisions. Minn.R.Evid. 609(a)(1), (b). Moreover, *Green* is consistent with Minnesota caselaw interpreting other aspects of Minn.R.Evid. 609. In addressing the admissibility of prior convictions to impeach a witness, the supreme court noted

that the district court had "discretion to restrict the use of the prior convictions" because the "convictions did not involve 'dishonesty or false statement.'" *Lanz–Terry*, 535 N.W.2d at 639 (quoting Minn.R.Evid. 609(a)(2)). Similarly, in addressing the standard to apply when determining whether a theft crime involved dishonesty or false statement, the supreme court noted:

> Minn.R.Evid. 609(a) provides that a prior conviction for *any* crime directly involving dishonesty or false statement is automatically admissible for impeachment purposes; it provides for discretionary admission of prior convictions for crimes not involving dishonesty or false statement if the crimes are felonies and if the trial court determines the probative value of the evidence outweighs the prejudicial effects.

*State v. Sims*, 526 N.W.2d 201, 201, 202 (Minn.1994).

We conclude that Minn.R.Evid. 609(a)(2) overrides the district court's general discretion to exclude relevant evidence under Minn.R.Evid. 403. The district court's general discretion to limit the scope of cross-examination is primarily based on the same concerns as its discretion to exclude relevant evidence. *See Lanz–Terry*, 535 N.W.2d at 639 (discretion to limit cross-examination based on concerns about harassment, confusion, repetition, and decision making on an improper basis). We therefore conclude that Minn.R.Evid. 609(a)(2) also overrides the district court's general discretion to limit the scope of cross-examination.

The state also contends the district court properly excluded the evidence about Braddock's prior convictions for providing false information to police because no precise definition exists for crimes involving dishonesty or false statement.

---

1. We reject the state's argument that Head waived his right to raise the rule 609(a)(2) issue on appeal. Head specifically argued before the district court that Braddock's prior convictions for providing false information were admissible under rule 609 as crimes involving dishonesty or false statement.

2. Following *Green*, Fed.R.Evid. 609(a)(1) was amended to refer to the balancing provisions in Fed.R.Evid 403. Fed.R.Evid. 609 1990 advisory comm. notes. Because Minnesota has not adopted similar amendments to Minn.R.Evid. 609, we still find *Green* helpful in interpreting Minn.R.Evid. 609(a)(2).

The difficulty in determining whether a particular crime falls under Minn.R.Evid. 609(a)(2) lies not in just the *type* of crime committed, but also in the *manner* in which the crime is carried out.

*State v. Ross,* 491 N.W.2d 658, 659 (Minn. 1992). But this difficulty is not present when dishonesty is an element of the crime.

> "In the case of some crimes, such as perjury, deceit is an element of the crime; conviction of the crime therefore imports the use of deceit. In the case of other crimes, deceit is not an element, *but the manner in which the witness committed the offense may have involved deceit, and if that is shown the conviction is admissible under Rule 609(a)(2)."*

*Id.* (quoting *Altobello v. Borden Confectionary Prods., Inc.,* 872 F.2d 215, 216 (7th Cir. 1989)).

Dishonesty is an element of providing false information to police. A person commits the crime by giving false identification information to a police officer. Minn.Stat. § 609.506, subds. 1, 2 (1996). The essence of the offense is being dishonest with or making a false statement to a police officer. Because dishonesty is an element of the crime, a conviction for providing false information to police falls within the plain language of Minn. R.Evid. 609(a)(2). It is unnecessary to look to the manner in which a particular offense was committed. The district court erred by excluding evidence about Braddock's two prior convictions for providing false information to police.

■ A conviction will not be reversed based on the erroneous exclusion of defense evidence if the error was harmless beyond a reasonable doubt. *State v. Post,* 512 N.W.2d 99, 102 (Minn.1994).

> [T]he reviewing court must be satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, an average jury (*i.e.* a reasonable jury) would have reached the same verdict.

*Id.* (footnote omitted).

The district court allowed other evidence that impeached Braddock. Seuss and Casady testified that Braddock initially provided false information when stopped on March 10, 1995. The court allowed Head to impeach Braddock with the prior conviction for auto theft. The jury also was informed about Braddock's past dealings with marijuana and about the criminal charges pending against him as a result of the March 10 incident. In light of this other evidence impeaching Braddock, the error in excluding the evidence about Braddock's prior convictions for providing false information to police was harmless beyond a reasonable doubt.

## II.

The district court has discretion to admit evidence of other crimes and its decision will not be reversed absent an abuse of discretion. *State v. DeWald,* 464 N.W.2d 500, 502–03 (Minn.1991).

> Evidence of other crimes
>
> is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

Minn.R.Evid. 404(b). When determining admissibility of evidence of other crimes,

> the trial court should engage in a balancing of factors such as the relevance or probative value of the evidence, the need for the evidence, and the danger that the evidence will be used by the jury for an improper purpose, or that the evidence will create unfair prejudice.

*State v. Bolte,* 530 N.W.2d 191, 197 (Minn. 1995) (footnote omitted).

Head argues that the 1991 and 1993 offenses were not relevant because they were dissimilar from the current offenses. When determining relevancy of other crime evidence,

> "the preferred approach is for the trial court to focus on the closeness of the relationship between the other crimes and the charged crimes in terms of time, place and modus operandi."

*Id.* at 198 (quoting *State v. Frisinger,* 484 N.W.2d 27, 31 (Minn.1992)).

■ Although Head's prior convictions for controlled substance crimes occurred at times and places different from the current offense, the prior convictions and the current offense were closely similar in terms of modus operandi. All three offenses involved relatively similar quantities of marijuana, varying between one and three pounds. In all three cases, Head was delivering the marijuana to a buyer. Head always had other persons with him, who potentially could be blamed for possessing the marijuana. In the 1991 Morrison County offense, as in the current offense, Head was transporting the marijuana in someone else's vehicle and had a beeper or pager with him and large amounts of cash on his person.

■ Head also argues that the probative value of the prior convictions was outweighed by the danger of unfair prejudice. Head objects to the district court admitting into evidence only what prior offenses he committed, the dates when and places where the offenses occurred, and the amounts of marijuana involved. Head argues that in order to meaningfully evaluate the evidence, the jury needed to hear about the circumstances underlying the prior offenses. But Head apparently wanted the jury to hear only limited information regarding the prior offenses because he stipulated to what information about the offenses would be admitted into evidence. By entering into the stipulation, Head waived his right to object to only the stipulated information being admitted. *See State v. Landro,* 504 N.W.2d 741, 746 (Minn.1993) (by failing to object at trial, defendant waives right to object unless the error was plain error affecting substantial rights or an error of fundamental law), *cert. denied,* 510 U.S. 1114, 1114, 114 S.Ct. 1059–60, 127 L.Ed.2d 380 (1994); *see also State v. Crocker,* 409 N.W.2d 840, 843–44 (Minn.1987) (after district court ruled evidence of prior crime admissible, defense counsel said "no objection" to using certified copy of conviction and other papers, including complaint, to prove conviction; district court properly allowed state to use certified court papers to prove prior offense).

· The record supports the district court's determinations that the evidence about the prior convictions was clear and convincing; the evidence was necessary to the state's case; the probative value of the evidence outweighed prejudicial effect; and the prior convictions showed intent, preparation, plan, knowledge, and absence of mistake. The district court did not abuse its discretion in admitting the evidence of other crimes.

### III.

■ Head argues the evidence was insufficient to support his convictions for possession of marijuana and possession of marijuana with intent to sell because there was insufficient evidence corroborating Braddock's and Homer's testimony. When the sufficiency of the evidence is challenged, this court must review

the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did.

*State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). This court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

■ A conviction can rest on the uncorroborated testimony of even a single credible witness. *State v. Hill,* 285 Minn. 518, 518, 172 N.W.2d 406, 407 (1969). But a

conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Minn.Stat. § 634.04 (1994).

Corroborating evidence is sufficient to convict if it confirms the truth of the accomplice's testimony and points to the defendant's guilt in some substantial degree. Circumstantial evidence indicating the defendant's participation in the crime is sufficient to corroborate the accomplice's testimony.

*State v. McKenzie,* 532 N.W.2d 210, 223 (Minn.1995) (citation omitted), *cert. denied,* —— U.S. ——, 116 S.Ct. 327, 133 L.Ed.2d 227 (1995). Evidence that is as

consistent with defendant's guilt as with his innocence is insufficient to corroborate accomplice testimony. *State v. Wallert,* 402 N.W.2d 570, 572 (Minn.App.1987), *review denied* (Minn. May 18, 1987).

Independent evidence showed that the registration for Braddock's car had expired and that a current registration sticker for a vehicle owned by Head was placed on the license plate of Braddock's car, making the car appear legally registered. Because this evidence indicates that Head was concerned about Braddock's car getting stopped by police, it corroborated Braddock's testimony that the marijuana in the car belonged to Head. Casady's testimony that the items he found on Head's person were the type of items normally used in the drug trade also indicated the marijuana belonged to Head and corroborated Braddock's testimony. Evidence about Head's demeanor during the stop and his prompt departure from the scene upon release also confirms Braddock's testimony and points to Head's guilt. Finally, evidence that police found cash only on Head's person corroborated Braddock's testimony that the trip was being made at Head's request and that Head was paying for the trip. The independent evidence corroborated Braddock's testimony and was sufficient to support Head's convictions. We, therefore, do not reach the issue of whether Homer was an accomplice whose testimony could not be used for purposes of corroborating Braddock's testimony.

## DECISION

The district court erred in excluding evidence about Braddock's prior convictions for providing false information to police, but the error was harmless. The district court properly admitted evidence about Head's prior convictions for controlled substance crimes. There was sufficient independent evidence to corroborate Braddock's testimony and support Head's convictions for possession of marijuana and possession of marijuana with intent to sell.

**Affirmed.**