*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0017**

In the Matter of the Welfare of: R. M. B., Child.

**Filed August 8, 2016**
**Reversed**
**Stauber, Judge**

Mower County District Court
File No. 50-JV-15-2335

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant R.M.B.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen C. Nelsen, Mower County Attorney, Aaron M. Jones, Assistant County Attorney, Austin, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant R.M.B. challenges his conviction of aiding and abetting burglary in the second degree, arguing the evidence was insufficient on the element of intent. Because the accomplice's testimony that R.M.B. acted as a "lookout" was uncorroborated, and because the circumstantial evidence supports an alternative rational hypothesis inconsistent with guilt, we reverse.

# FACTS

On the evening of October 10, 2015, appellant R.M.B. and four others—Jordan Barclay; Emilio Rivera; Robert Cole ("Rock"); and C.J. went to C.G.'s house looking for a party. Jordan Barclay is R.M.B.'s older brother, and Rock, then 27 years old, is a friend of R.M.B.'s mother. F.M., a mutual friend of both R.M.B. and C.G., told R.M.B. there was a party at C.G.'s house. C.G. was hanging out with friends in his garage behind his house when R.M.B. and his four companions arrived and knocked on the garage door. C.G. answered the door and told the group that there was no party but that F.M. might be next door. The group went next door, but F.M. was not there.

While the group was leaving, someone mentioned that no one was inside C.G.'s house. C.J. went to the front door and knocked, but no one answered. C.G. and his friends were still in the garage behind the house. While C.J. stood at the front door, Rock entered the house and took a television. Rivera waited in the car.

C.G. later claimed that he was missing a 50-inch Vizio Smart TV, an Xbox, and numerous Xbox games and DVDs.

All members of the group were charged with burglary, but C.J. was offered a plea deal whereby the charge against him would be dismissed if he would testify against the co-defendants. At trial, C.J. testified that while Rock entered the house R.M.B. stood outside on a driveway about 15 feet from the front door and that R.M.B.'s presence there made him think R.M.B. was acting as a lookout. C.J. also testified that R.M.B. was "watching for people, anybody" so that the group would not get caught. He testified,

"There was no saying that 'you're a lookout, . .' and 'we're going to do this,' not premeditated or nothing. It was—we were going with the flow."

On cross-examination C.J. admitted that during the crime his attention was mainly focused on Rock and what was happening inside the house, not on R.M.B. C.J. confirmed that he believed R.M.B. was a lookout only due to his presence outside, and that R.M.B. never said he would act as a lookout and never warned anyone about others approaching. On re-direct, C.J. testified that R.M.B. never tried to convince the others not to burglarize the house, but he did not need to because "[j]ust his body language in general didn't really look like he wanted to go do it." If anything, C.J. said, R.M.B.'s conduct was due to "peer pressure from the group." When Rock left the house with the stolen items, the group all ran to the waiting car and Rivera drove them away. They dropped R.M.B. off at home at his request, and then they sold the television.

B.H., whose boyfriend's brother is the victim, C.G., testified that R.M.B. "friended" her on Facebook after the burglary. Over Facebook Messenger R.M.B. initially told B.H. that on the night of the burglary he saw that C.G.'s door was open and saw "kids running with s--t" from the house. He also told B.H. that he did not steal any of the items and that he was trying to retrieve the items to return them, but that he did not know where they were located. B.H. asked R.M.B. to identify the thief, but R.M.B. replied that he did not want to "snitch." Finally, R.M.B. told B.H. that his friends sold the television and that he did not know where the Xbox was located. Law enforcement located the Xbox in a vehicle near R.M.B. and his brother's home.

R.M.B told law enforcement in a recorded interview that he walked away from C.G.'s house toward a nearby bridge because he saw C.J. and Rivera enter the house. He said that after the burglary the group picked him up by the bridge. R.M.B. said that he rode home with the group because he was worried about being cited for a curfew violation. R.M.B. said the others sold the television to someone he did not know, that he refused when the group asked him to hide the Xbox, and that his brother hid the Xbox in a car near their house.

On November 4, 2015, the district court found R.M.B. guilty of aiding and abetting second-degree burglary, concluding there was no reasonable doubt that R.M.B. knew his accomplices were going to commit a crime and that R.M.B.'s acts demonstrated his intent to aid in the commission of the crime. The district court credited C.J.'s accomplice testimony that R.M.B. was acting as a lookout. The district court rejected R.M.B.'s statements that he was down the street during the burglary and that he took a ride home with the burglars because he was worried about a curfew violation. The court found:

> [R.M.B.'s] actions following the burglary show that he intended to aid the commission of the crime because although he stated multiple times that he wanted to return the items, he did nothing to facilitate the return, did not contact law enforcement, and was not forthcoming with information regarding what happened, who was present, or where the items were when contacted by law enforcement. This conduct creates an inference that [R.M.B.] intended his presence to aid the commission of a crime, specifically burglary.

On December 16, 2015, the district court adjudicated R.M.B. delinquent and placed him on probation. R.M.B. now appeals.

4

**D E C I S I O N**

We agree with R.M.B.'s argument that the evidence at trial was insufficient to prove beyond a reasonable doubt that he intentionally aided the others in committing second-degree burglary because the accomplice testimony was not sufficiently corroborated, and the circumstances proved at trial support a rational hypothesis inconsistent with his guilt.

The due process clauses of the Minnesota and United States Constitutions require that the state prove "each element of the crimes charged beyond a reasonable doubt." *State v. Merrill*, 428 N.W.2d 361, 366 (Minn. 1988); U.S. Const. amends V, XIV; Minn. Const., art I, § 7. To support an aiding and abetting second-degree burglary conviction, the state was required to prove beyond a reasonable doubt that R.M.B. intentionally aided his friends in committing second-degree burglary and made no reasonable effort to prevent the crime. Minn. Stat. § 609.05, subds. 1, 3 (2014); 10 *Minnesota Practice*, CRIMJIG 4.01 (2015). A defendant's presence constitutes aiding if: (1) the defendant knew his alleged accomplices were going to or were committing a crime, and (2) the defendant intended that his presence and actions aid in the commission of the crime. CRIMJIG 4.01.

> This court distinguishes between a knowing role in the crime and inaction, knowledge, and passive acquiescence. Active participation in the actual commission of the offense is not required to constitute the aiding and abetting of that crime, and appellant's presence, companionship, and conduct before and after an offense is committed are relevant circumstances from which the [fact-finder] may infer criminal intent.

*Bernhardt v. State*, 684 N.W.2d 465, 477 (Minn. 2004) (quotation omitted).

5

Because the "intentionally aids" element evinces a state of mind, it is generally proved through circumstantial evidence. *State v. McAllister*, 862 N.W.2d 49, 53 (Minn. 2015). If a conviction is based on circumstantial evidence, a higher level of scrutiny is warranted. *Id*. The circumstances proved must be "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *Id*. Applying the circumstantial evidence standard is a two-step process. The first step is to identify the circumstances proved. *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013). In identifying the circumstances proved, we defer to the fact finder's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the state. *Id*. As with direct evidence, conflicting evidence is construed in the light most favorable to the verdict. *Id*. at 599. The second step is to independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). In this second stage, we give no deference to the fact finder's choice between reasonable inferences. *Id*. at 330.

Because R.M.B.'s conviction rests on his knowledge and intent while being in close proximity to the burglary, the circumstantial evidence standard is applied. Under the first step, the following circumstances were proved at trial: (1) while R.M.B. and his friends were walking past C.G.'s house, someone in the group pointed out that the house was unoccupied; (2) while his friends committed the crime, R.M.B. was close enough to the house to know who entered it and which items were taken; (3) R.M.B. received a ride

home from his friends knowing there were stolen items in the car; (4) R.M.B. was out past curfew; (5) R.M.B. told B.H. and law enforcement officers that he was trying to facilitate the return of the stolen items; (6) R.M.B. was not able to persuade the others to return the items, although he believed his brother hid the Xbox in a car near their house; (7) R.M.B. told B.H. that he was not going to "snitch" on his friends; and (8) R.M.B. did not aid law enforcement until arrested.

R.M.B. argues that the district court impermissibly found that he was acting as a lookout—and thus this circumstance was not proved at trial—because the district court relied solely on C.J.'s uncorroborated accomplice testimony. The parties do not dispute that C.J. meets the definition of an accomplice, and the state's theory at trial that R.M.B. acted as a lookout was largely based on C.J.'s testimony.

Under Minnesota law, "[a] conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." Minn. Stat. § 634.04 (2014). The statute recognizes that accomplice testimony is inherently suspect, *State v. Jackson*, 746 N.W.2d 894, 898 (Minn. 2008), because of concern that an accomplice will offer self-serving, dishonest testimony, *State v. Clark*, 755 N.W.2d 241, 253 (Minn. 2008). When the sufficiency of corroborating evidence is challenged, this court views such evidence in the light most favorable to the verdict and resolves any inconsistencies in favor of the state. *State v. Pippitt*, 645 N.W.2d 87, 93 (Minn. 2002).

Furthermore, corroborative evidence may be circumstantial in nature and may relate to the conduct of the accused. *State v. Star*, 248 Minn. 571, 576, 81 N.W.2d 94, 98

7

(1957). "The defendant's entire conduct may be looked to for corroborating circumstances. If his connection to the crime may be fairly inferred from those circumstances, the corroboration is sufficient." *Id*. Corroborative evidence may include, (1) the proximity of the defendant to the place where the crime was committed, (2) an association with persons involved in the crime in such a way as to suggest joint participation, or (3) a subsequent false denial by the accused that he was present or had been in association with a participant in the crime. *State v. Sorg*, 275 Minn. 1, 5, 144 N.W.2d 783, 786 (1966); *Star*, 248 Minn. at 576, 81 N.W.2d at 98. In the end, the corroborative evidence must be "weighty enough to restore confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial way." *Pippitt*, 645 N.W.2d at 93.

Here, C.J.'s testimony about R.M.B.'s connection to the burglary was weak and inconsistent. C.J. testified that R.M.B. never agreed to be a lookout, that only R.M.B.'s presence outside the house made C.J. believe that R.M.B. was a lookout, and that R.M.B.'s body language indicated he did not want to participate in the crime. C.J. also admitted that he was inattentive to what R.M.B. was doing because he was watching Rock's actions inside the house. But C.J. also testified that he believed R.M.B. was "watching for people, anybody" so that the group would not get caught, and that R.M.B.'s conduct was attributable to "peer pressure," which suggests guilt.

This circumstantial corroborative evidence is insufficient to point to R.M.B.'s guilt in a substantial way. The state argues C.J.'s testimony that R.M.B. was a lookout was corroborated by several common facts in the testimony of C.J. and C.G., as well as

8

R.M.B.'s statement to law enforcement. Regarding R.M.B.'s proximity to the scene, C.G. testified that R.M.B. was present at the garage and that a burglary occurred soon after. But the required corroboration must tend to convict the accused and not merely show the commission of the crime or the circumstances thereof. *Star*, 248 Minn. at 575–76, 81 N.W.2d at 98. Because C.G.'s testimony shows only a crime was committed and that R.M.B. was present beforehand, it is not sufficient corroborating evidence.

Further, this court held in *State v. Wallert* that when the corroborating evidence is as consistent with the defendant's innocence as with his guilt, the evidence is insufficient to serve as corroborative accomplice testimony. 402 N.W.2d 570, 572 (Minn. App. 1987). While the circumstances show that R.M.B. was close enough to the house to determine who entered it, R.M.B. also told law enforcement that because he witnessed his friends enter the home, he walked away from the scene toward a nearby bridge, where he was picked up. R.M.B.'s statement that he was at the bridge was never credibly contradicted at trial. Therefore, as for R.M.B.'s proximity to the scene, the corroborating evidence is as consistent with R.M.B.'s innocence as with his guilt. Concerning R.M.B.'s association with his friends after the burglary, the fact that R.M.B. rode home with his friends is consistent with guilt, but it also may be consistent with R.M.B.'s innocence because it is reasonable to infer that R.M.B. needed a ride home due to curfew concerns. Furthermore, R.M.B.'s statements to law enforcement and to B.H. that he was trying to facilitate the return of the stolen items do not necessarily implicate R.M.B. in the burglary, and these statements are plausible to bolster R.M.B.'s contention that he was uninvolved and did not want to get in trouble for something he did not do. Finally,

9

R.M.B.'s initial false denials to B.H. about being present at the scene and his initial statement that failed to mention Rock's involvement may be suggestive of his guilt. But these statements could also have been motivated by peer pressure and the desire to keep his friends out of trouble, especially 27-year-old Rock.

In examining the inferences that might be drawn from the circumstances proved, one rational hypothesis is that R.M.B. intended to help his friends commit the burglary. However, another rational hypothesis is that R.M.B. remained near the house or walked to the bridge and took a ride home with the burglars because he did not want to walk home, and that his false statements were a response to peer pressure from his older friends. Because this second rational hypothesis shows only that R.M.B. was present and passively acquiesced to the crime, it is inconsistent with guilt.

In sum, the evidence at trial was insufficient to prove beyond a reasonable doubt that R.M.B. intentionally aided the burglary because C.J.'s testimony that R.M.B. was acting as a lookout was insufficiently corroborated, and the circumstantial evidence reveals an alternative rational hypothesis inconsistent with R.M.B.'s guilt.

**Reversed.**