*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0299**

State of Minnesota,
Respondent,

vs.

Dewaun Lee Timmons-Greenwood,
Appellant

**Filed January 20, 2015
Affirmed
Worke, Judge**

St. Louis County District Court
File No. 69DU-CR-12-4021

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Rebekka L. Stumme, Assistant County Attorney, Duluth, Minnesota (for respondent)

Melvin R. Welch, Welch Law Firm, St. Paul, Minnesota; and

Geoffrey R. Saltzstein, Appelman Law Firm, St. Louis Park, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Worke, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his aiding-and-abetting-armed-robbery conviction, arguing that corroborating evidence was insufficient and that his attorney was ineffective. We affirm.

## FACTS

Appellant Dewaun Lee Timmons-Greenwood was charged with aiding and abetting armed robbery. J.H., who had pleaded guilty to the robbery, testified that in the early morning hours of October 14, 2012, he called Timmons-Greenwood and asked for a ride home from a party. Timmons-Greenwood asked J.H. if he would like to make some money. J.H. replied in the affirmative, and Timmons-Greenwood picked up J.H. and J.H.'s friend.

Timmons-Greenwood handed J.H. a black gun, and suggested that J.H. rob a cab driver. Timmons-Greenwood had worked for the cab company and knew where drivers kept their money. J.H. and his friend located a cab and directed the driver to C.F.'s residence. Timmons-Greenwood followed the cab in his vehicle, and placed several calls to J.H. As the driver asked for the fare, J.H. revealed the gun and J.H.'s friend grabbed the driver from behind in a choke-hold. The driver struggled free and fled. J.H. ordered him to stop and fired a warning shot. The driver stopped and J.H. demanded money, which the driver threw onto the ground. J.H. and his friend took the money and ran to C.F.'s residence where they met Timmons-Greenwood, who took the gun. The three entered C.F.'s residence and divided the money. Later that day, Timmons-Greenwood told J.H. that he should hide the gun. J.H. and his friend were arrested a few days after the robbery. Around that time, Timmons-Greenwood contacted police and denied any involvement in the robbery.

J.H.'s friend testified that Timmons-Greenwood was not involved in the robbery. This conflicted with his testimony given during his plea hearing and his statements to

2

investigators. J.H.'s friend was shown transcripts of his past testimony, but insisted that he could not recall Timmons-Greenwood's involvement.

C.F. testified that Timmons-Greenwood, J.H., and J.H.'s friend arrived at her residence in the early morning hours of October 14. Later that day, she saw Timmons-Greenwood walk out of a room in her residence carrying a black gun.

L.V., J.H.'s grandmother, testified that she questioned J.H. about the robbery in the presence of Timmons-Greenwood. J.H. admitted to the robbery and stated that he split the money with Timmons-Greenwood. Timmons-Greenwood reacted strongly to this statement, and L.V. cautioned Timmons-Greenwood not to intimidate J.H., as he had done on past occasions. J.H. initially told L.V. that he got the gun from friends, but after his arrest he admitted that Timmons-Greenwood had given him the gun.

A.V., L.V.'s husband, testified that shortly after the robbery Timmons-Greenwood told him that L.V. had given him permission to store his gun at their residence. A.V. stored a black gun for Timmons-Greenwood. After A.V. learned that L.V. had not given Timmons-Greenwood permission to store a gun at their residence, A.V. told Timmons-Greenwood to retrieve the gun, which he did.

Before trial, Timmons-Greenwood attempted to introduce impeachment evidence in the form of possible prior convictions against three witnesses. The district court directed the prosecutor to make inquiries about these convictions, many of which were from Illinois. The prosecutor did so, but never received a response. Because there were no certificates of conviction, no details regarding the past crimes, and because many of

3

the possible convictions were decades old, the district court would not allow the past crimes to be used as impeachment evidence.

The jury found Timmons-Greenwood guilty, and this appeal followed.

**D E C I S I O N**

*Corroborating evidence*

Timmons-Greenwood first argues that the corroborating evidence was insufficient. "Whe[n] there is a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the verdict to determine if the evidence was sufficient to permit the jury to reach the verdict it did." *State v. Ford*, 539 N.W.2d 214, 225 (Minn. 1995). We assume that the jury believed the state's witnesses and disbelieved contrary evidence presented. *State v. Huss*, 506 N.W.2d 290, 292 (Minn. 1993).

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense . . . ." Minn. Stat. § 634.04 (2012). "Corroborating evidence must link or connect the defendant to the crime. It is not necessary that it establish a prima facie case of the defendant's guilt." *Ford*, 539 N.W.2d at 225.

> Corroborating evidence may be secured from the defendant's association with those involved in the crime in such a way as to suggest joint participation, as well as from the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed. The defendant's entire conduct may be looked to for corroborating circumstances. If his connection to the crime may be fairly inferred from those circumstances, the corroboration is sufficient.

4

*Id.* (quotations and citations omitted). Also, corroborating evidence of "possession of an instrument . . . probably used to commit the offense" links the defendant to the crime. *State v. Clark*, 755 N.W.2d 241, 254 (Minn. 2008).

Timmons-Greenwood argues that because his statements to investigators and the testimony of J.H.'s friend conflict with the account of J.H. and the corroborating witnesses, his conviction cannot be sustained. He cites *State v. Wallert* for the proposition that when testimony is as consistent with innocence as with guilt, the testimony of corroborating witnesses is insufficient. 402 N.W.2d 570, 572 (Minn. App. 1987), *review denied* (Minn. May 18, 1987). But Timmons-Greenwood's reliance is misplaced, because in *Wallert* the corroborating evidence did not point directly to the defendant's guilt. *Id.* (stating that when evidence is as consistent with innocence as guilt, it is insufficient to corroborate accomplice testimony).

Here, corroborating evidence supported J.H.'s testimony and pointed directly to Timmons-Greenwood's guilt. C.F.'s testimony places Timmons-Greenwood in proximity to the time and place of the robbery, in association with those who pleaded guilty to the robbery, and with the gun used to commit the robbery. L.V.'s testimony demonstrates that Timmons-Greenwood had a degree of authority and control over J.H. and that the two shared the proceeds of the robbery. A.V.'s testimony shows that Timmons-Greenwood owned the gun used during the robbery and that Timmons-Greenwood attempted to hide the gun shortly thereafter. This corroborating evidence is sufficient to sustain Timmons-Greenwood's conviction.

*Ineffective assistance of counsel*

Timmons-Greenwood also argues that his attorney was ineffective for failing to impeach the state's witnesses. Ineffective-assistance-of-counsel claims involve a mixed question of fact and law, and are reviewed de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). Timmons-Greenwood must show "that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Id.* (quotation omitted) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). We need not address both prongs if one is determinative of the claim. *Id*.

Timmons-Greenwood asserts that his attorney discovered impeachment evidence in the form of possible prior convictions, but then failed to properly investigate and see to it that the evidence was admitted. After defense counsel moved to admit the impeachment evidence, the district court ordered the state to seek further information. *See* Minn. R. Crim. P. 9.01, subd. 2(1) (prosecutor must, at defense counsel's request, assist the defendant in seeking access to information possessed by other governmental agencies). Although the state sought information, it received no response. The district court stated that such a result is common when seeking information from Illinois. The district court then ruled that the evidence could not be admitted because there were no certificates of conviction and no known dispositions. Timmons-Greenwood fails to mention the district court's ruling.

6

Defense counsel was diligent in discovering the potential impeachment evidence, seeking further information, and moving the district court to admit the evidence. Abiding by the district court's ruling was reasonable. There is no need to address prejudice.

**Affirmed.**